# NO. 23-13874

## In The
## United States Court Of Appeals
## For The Eleventh Circuit

**MOTHER DOE, on behalf of John Doe,**

*Plaintiff - Appellant,*

v.

**GRINDR, LLC, GRINDR HOLDINGS LLC, formerly known as KL Grindr Holdings LLC,**

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

———————————

### BRIEF OF APPELLANT

———————————

Krisel McSweeney
MCSWEENEY LAW FIRM
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(800) 540-0668

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA 23219
(804) 249-7770 ♦ www.gibsonmoore.net

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellant Mother Doe on behalf of her minor child John Doe, pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 26.1–1, 26.1–2, and 26.1–3, hereby submits her Certificate of Interested Persons and Corporate Disclosure Statement.

1) In alphabetical order, are all trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations and other identifiable legal entities related to a party:

A) Antoon, John - Senior District Judge, Middle District of Florida

B) Davis Wright Tremaine LLP – Law Firm for Appellees

C) Doe, John - Appellant, by and through Mother Doe

D) Doe, Mother - Appellant, on behalf of John Doe

E) Fairchild, Sara - Attorney for Appellees

F) Gold, Loren L. – Attorney for Appellant

G) Grindr, LLC - Appellee

H) Grindr Capital LLC – sole member of Appellee Grindr Holdings LLC

I) Grindr Gap LLC – sole member of Grindr Capital LLC

J) Grindr Group LLC – sole member of Grindr Gap LLC

K) Grindr Holdings LLC - Appellee

L) Grindr Inc. (GRND) – sole member of Grindr Group LLC

M)     Hach Rose Schirripa & Cheverie, LLP – Law Firm for Appellant

N)     Kumar, Ambika - Attorney for Appellees

O)     Loren L. Gold, P.A. – Law Firm for Appellant

P)     McSweeney Law Firm - Law firm for Appellant

Q)     McSweeney, Krisel - Attorney for Appellant

R)     Nappi, Hillary– Attorney for Appellant

S)     Walters Law Group - Law Firm for Appellees

T)     Walters, Lawrence G. - Attorney for Appellees

2.     The name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

Grindr Inc. (GRND)

3.     The name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:

None.

_____/s/ Krisel McSweeney_____
Krisel McSweeney
*Counsel for Appellant*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Eleventh Circuit Rule 28–1(c), Appellant believes that oral argument will assist the Court in deciding this appeal.

This appeal presents important questions concerning whether Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230") immunizes the Defendants from claims of negligence and intentional infliction of emotional distress ("IIED"). These are novel questions of first impression with unsettled law in this circuit. A robust discussion of these complex issues at oral argument will substantially assist the Court in its consideration of this appeal. Oral argument will also allow the Court to explore the Appellant's arguments in greater detail.

# **TABLE OF CONTENTS**

**Page:**

CERTIFICATE OF INTERESTED PERSONS AND
  CORPORATE DISCLOSURE STATEMENT ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................... iii

TABLE OF CONTENTS ............................................................................iv

TABLE OF AUTHORITIES ........................................................................vi

STATEMENT OF JURISDICTION ..........................................................1

STATEMENT OF THE ISSUES ...............................................................1

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE.................................................................2

    BACKGROUND ...................................................................................2

    PROCEDURAL HISTORY ..................................................................4

    STANDARD OF REVIEW....................................................................5

SUMMARY OF ARGUMENT................................................................8

ARGUMENT .......................................................................................10

    I.      SECTION 230 DOES NOT BAR DOE'S STATE CLAIMS ...........10

          A.     Doe's Claims do not Treat Defendants as "Publisher or
                Speaker".................................................................................13

          B.     Doe's Negligence and IIED Claims Are Not Based on
                Third-Party Content ................................................................21

    II.     PUBLIC POLICY AND LEGISLATIVE INTENT REQUIRE A
          REVERSAL OF THE DISTRICT COURT'S DECISION ...............25

III.    DEFENDANTS MATERIALLY CONTRIBUTED TO THE ILLEGALITY OF PRITT'S CONDUCT RESULTING IN PLAINTIFF'S SEXUAL ABUSE .......................................................27

CONCLUSION ........................................................................................32

CERTIFICATE OF COMPLIANCE.........................................................33

CERTIFICATE OF FILING AND SERVICE...........................................34

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*A.M. v. Omegle.com, LLC*,
   614 F. Supp. 3d 814 (D. Or. 2022) ................................................................24

*Am. Income Life Ins. Co. v. Google, Inc.*,
   2012 U.S. Dist. LEXIS 190487 (N.D. Ala. 2012) ........................................22

*Anderson v. Tiktok, Inc.*,
   2022 U.S. Dist. LEXIS 193841 (E.D. Pa.  2022) ..........................................15

*Ashcroft v. Iqbol*,
   556 U.S. 662 (2009) .........................................................................................5

*Barnes v. Yahoo, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ...........................................................13, 17, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................5

*Brooks v. Blue Cross & Blue Shield of Fla. Inc.*,
   116 F.3d 1364 (11th Cir. 1997) .......................................................................5

*Brown v. Budget Rent–A–Car Sys., Inc.*,
   119 F.3d 922 (11th Cir. 1997) .........................................................................5

*Camacho v. Control Grp. Media Co., LLC*,
   2022 U.S. Dist. LEXIS 140211 (S.D. Cal. 2022) .........................................16

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) .......................................................................17

*City of Chicago v. StubHub!, Inc.*,
   624 F.3d 363 (7th Cir. 2010) .........................................................................17

*CYBERsitter, LLC v. Google Inc.*,
   905 F. Supp. 2d 1080 (C.D. Cal. 2012) .........................................................31

*Dimeo v. Max*,
    433 F. Supp. 2d 523 (E.D. Pa. 2006)............................................................15

*Doe v. Internet Brands, Inc.*,
    824 F.3d 846 (9th Cir. 2016).....................................................16, 18, 20, 23

*Doe v. MG Freesites, Ltd.*,
    2022 U.S. Dist. LEXIS 23199 (N.D. Ala. 2022)...........................................27

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019)........................................................................17

*E-Ventures Worldwide, LLC v. Google, Inc.*,
    188 F. Supp. 3d 1265 (M.D. Fla. 2016) ..................................................11, 12

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .......................................................................14

*Fla. Abolitionist v. Backpage.com, LLC*,
    2018 U.S. Dist. LEXIS 55560 (M.D. Fla. 2018)....................................13, 31

*FTC v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) .....................................................................27

*FTC v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016)...........................................................................11

*FTC v. LeanSpa, LLC*,
    920 F. Supp. 2d 270 (D. Conn. 2013)............................................................31

*Green v. Am. Online*,
    318 F.3d 465 (3d Cir. 2003)...........................................................................17

*Harry v. Marchant*,
    291 F.3d 767 (11th Cir. 2002)..........................................................................5

*Herrick v. Grindr, LLC*,
    306 F. Supp. 3d 579 (S.D.N.Y. 2018)....................................................11, 14

*Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*,
    418 F. Supp. 2d 1142 (D. Ariz. 2005)...........................................................31

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021) ....................................................................14, 15

*In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*,
    2023 U.S. Dist. LEXIS 203926 ............................................................ 24-25

*J.S. v. Vill. Voice Media Holdings, LLC*,
    184 Wn.2d 95 (Wash. Sept. 3, 2015)............................................................29

*Julie Doe II v. MySpace, Inc.*,
    175 Cal. App. 4th 561 (2009) .........................................................22, 23, 24

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ....................................................................6

*L.H. v. Marriott Int'l, Inc.*,
    604 F. Supp. 3d 1346 (S.D. Fla. 2022) .......................................................21

*Lansing v. Southwest Airlines Co.*,
    2012 Ill. App. LEXIS 458 (1st DCA 2012)............................................17, 18

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) ..............................................................*passim*

*M.A. ex rel. v. Village Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011)........................................................30

*M.H. v. Omegle.com, LLC*,
    Case No. 8:21-cv-814-VMC-TGW,
    2022 WL 93575 (M.D. Fla. Jan. 10, 2022)........................................6, 13, 16

*Malwarebytes, Inc., Petitioner v. Enigma Software Grp. USA, LLC*,
    141 S. Ct. 13 (2020)................................................................................12, 23

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013)......................................................................................19

*Maryland v. Craig*,
    497 U.S. 836 (1990)......................................................................................26

*Maynard v. Snapchat, Inc.*,
346 Ga. App. 131 (Ga. Ct. App. Oct. 30, 2020)............................................20

*McCall v. Zotos*,
2023 WL 3946827 (11th Cir. June 12, 2023) ................................................25

*MG Freesites, Ltd.*,
2022 U.S. Dist. LEXIS 23199 ................................................................28, 29

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009)....................................................................28, 30

*Roca Labs, Inc. v. Consumer Op. Corp.*,
140 F. Supp. 3d 1311 (M.D. Fla. 2015)........................................................13

*Rodriguez v. OfferUp, Inc.*,
2019 U.S. Dist. LEXIS 247480 (M.D. Fla. 2019).........................................22

*Saponaro v. Grindr, LLC*,
93 F. Supp. 3d 319 (D.N.J. 2015).....................................................13, 18, 27

*Vanlandingham v. City of Abbeville, Alabama*,
483 F. Supp. 3d 1174 (M.D. Ala. 2020) ..........................................................5

*Whitney Info. Network, Inc. v. Verio, Inc.*,
2006 U.S. Dist. LEXIS 1424 (M.D. Fla. Jan. 11, 2006) ...............................16

*Whitney Info. Network, Inc., LLC*,
2008 U.S. Dist. LEXIS 11632 ......................................................................22

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) .......................................................................15

**Statues:**

18 U.S.C. § 1291 .......................................................................................1, 4

28 U.S.C. § 1332 ...........................................................................................1

47 U.S.C. § 207(d) .......................................................................................11

47 U.S.C. § 230 ..................................................................................*passim*

47 U.S.C. § 230(c) ....................................................................1, 9, 17

47 U.S.C. § 230(c)(1)..................................................................*passim*

47 U.S.C. § 230(c)(2) ........................................................................12

47 U.S.C. § 230(c)(2)(A) ..............................................................11, 12

47 U.S.C. § 230(e)(3) ........................................................................11

Ark. Code § 4-88-1104 ......................................................................30

La R. S. § 2800.28(B)(1) ...................................................................30

MCA § 30-14-159 ..............................................................................30

Miss. Code Ann. § 11-77-3 ................................................................30

Tex. Civ. Prac. & Rem. Code § 129B.003 .........................................30

Utah Code Ann. § 78B-3-1002 ..........................................................30

Va. Code Ann. § 8.01-40.5 ................................................................30

**Rules:**

11th Cir. Loc. R. 31-1..........................................................................1

Fed. R. App. 4(a)(1) .............................................................................1

Fed. R. Civ. P. 8(a)(2)..........................................................................5

Fed. R. Civ. P. 12(b)(6) ...............................................................4, 5, 10

**Other Authorities:**

141 Cong. Rec. S1953 (daily ed. Feb. 1, 1995)..................................26

Lukmire, *Can the Courts Tame The Communications Decency Act?:
The Reverberations of Zeran v. America Online,*
    66 N.Y.U. Ann. Surv. Am. L. 371 (2010) ..................................26

## STATEMENT OF JURISDICTION

The United States Court for the Middle District of Florida had jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship, and this case and controversy exceeds $75,000.

The District Court entered the Order appealed from on October 26, 2023 (the "Order"). Doc. 50. Appellant filed a notice of appeal on November 22, 2023 which is timely pursuant to Local R. 31–1; Fed. R. App. 4(a)(1). Doc. 51. This Court has appellate jurisdiction pursuant to 18 U.S.C. § 1291 because this appeal is from a final decision disposing of all claims against all parties.

## STATEMENT OF THE ISSUES

I. Whether Grindr is immune pursuant to the Communications Decency Act of 1996, 47 U.S.C. § 230(c) (Section 230"), when it negligently operated its app by maintaining a weak age verification system, misrepresenting minors' ability to create an account on the app, and failing to warn of the known risk of sexual abuse to minors.

II. Whether, in the alternative, Appellant's claims are excepted under Section 230 due to Grindr's material contribution resulting in Plaintiff's sexual abuse.

## INTRODUCTION

Mother Doe, on behalf of her minor son, John Doe ("Doe"), appeal the October 26, 2023 order issued by the District Court for the Middle District of Florida dismissing the Second Amended Complaint. The District Court held that Section 230 of the Communications Decency 47 U.S.C. § 230 ("Section 230") operates as a complete bar to the Appellant's case prior to discovery, despite well–pleaded facts

that the claims brought forth are based on Defendants' own misconduct. Appellant's claims are not based on third party content and do treat Defendants as a publisher or speaker, and thus, do not fall under the purview of Section 230.

## STATEMENT OF THE CASE

### BACKGROUND

Grindr is a dating application that facilitates sexual encounters between its users. Doc. 28 ¶ 13. Every time the Grindr website is visited, an autoplay video shows six men in underwear—clearly outlining their genitalia—engaging in sexually suggestive touching. Doc. 28 ¶ 18. Grindr offers a subscription-based "incognito feature" that promotes user anonymity, allowing subscribers to leave their profiles empty without disclosing personal details such as name, age, or location. Doc. 28 ¶ 16. Doe and Edward Pritt ("Pritt"), an adult male Grindr user, met virtually, and Pritt facilitated a physical meeting via the Grindr app. *Id*. Pritt's profile was anonymous, lacked a picture and personal information, and only displayed an avatar. Doc. 28 ¶ 27. Pritt located Doe using the app's geolocation features. Doc. 28 ¶ 28. On or about October 2, 2022, law enforcement discovered Doe, who was just thirteen years old, performing sexual acts on Pritt in his car. Doc. 28 ¶ 26.

Grindr falsely claims that minors cannot register on its app or website. Doc. 28 ¶ 16. Prior to Plaintiff's sexual assault, Defendants had actual and/or constructive notice of allegations involving sexual abuse or trafficking of minors by adult male

Grindr users, after easily accessing and creating a profile on Grindr. Doc. 28 ¶¶ 18,

19.  Indeed, Defendants maintained a weak and perfunctory age verification system,

allowing minors to easily bypass verifying their age and create a profile, making

them a target for sexual predators. Doc. 28 ¶ 14. Notably, many options exist for

Grinder to have more effective age verification measures, but Grindr has refused to

implement, although it is aware of the serious danger it presents to minors accessing

the website or application. Doc. 28 ¶ 22. Further, Grindr fails to acknowledge that

minors have the ability to sign up on Grindr with the potential of being sexually

abused or trafficked by its adult users. Doc. 28 ¶ 17. Due to Defendants' failure to

implement reasonable safety measures, Doe was sexually abused by Pritt. Doc. 28 ¶

11.

Grindr neglected its responsibility by continuing to use an inadequate age

verification system, falsely claiming that minors could not register, and not alerting

users to the well-known risks of sexual abuse of minors, significantly contributing

to Pritt's sexual exploitation of Doe. Doc. 28 ¶ 20, 21. Grindr had up to 13 million

active users at the end of 2022 and is worth over $977 million. Doc.  28 ¶ 26. Grindr

has an incentive to recklessly turn a blind eye to underage users because those

additional users increase its profits. Doc. 28 ¶ 24. Grindr is fully aware of the extent

to which its website is used to sexually target, groom, exploit, and abuse children

like Doe. Doc. 28 ¶17.

## PROCEDURAL HISTORY

Appellant resides in Florida and commenced this lawsuit on March 21, 2023 in the United States District Court for the Middle District of Florida. Doc. 1. On April 26, 2023, a First Amended Complaint was filed. Doc. 8. On June 20, 2023, Grindr, LLC. filed a Motion to Dismiss the First Amended Complaint. Doc. 22.

On July 5, 2023, a Second Amended Complaint was filed, alleging negligence and intentional infliction of emotional distress. Doc. 28. On August 23, 2023, a Motion to Dismiss the Second Amended Complaint was filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 44. Defendants argued that Section 230 immunized their alleged conduct. *Id*. On October 26, 2023, Judge John Antoon II dismissed Plaintiff–Appellant's Second Amended Complaint. Doc. 50. Specifically, the Court found that "Defendants meet the three elements required for immunity under Section 230." Doc. 50, p. 7. The District Court also determined that Defendants did not make a material contribution to the illegality of Pritt's conduct, and thus, Plaintiff's claim failed to meet the exception under Section 230. Doc. 50, p. 6.

By order entered on October 26, 2023, the District Court dismissed Plaintiff–Appellant's Second Amended Complaint with prejudice. This order was immediately appealable as a final decision pursuant to 28 U.S.C. § 1291. Plaintiff–Appellant timely filed her notice of appeal on November 22, 2023. Doc.51.

**STANDARD OF REVIEW**

This Court reviews *de novo* district court decisions on a motion to dismiss. Under this standard, the Court accepts the facts as true and construes all favorable inferences in the light most favorable to the plaintiff. *Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002); *Brown v. Budget Rent–A–Car Sys., Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).[1] Since the District Court summarily granted Section 230 immunity to the Appellees, the Appellant's claims were dismissed without being treated "as true" and without "all favorable inferences in the light most favorable to the plaintiff." The District Court blanketly applied Section 230, without consideration of the specific facts alleged by Doe.

In this case, the Appellant amply pleaded claims and is entitled to the presumption that those allegations are true. *Brooks v. Blue Cross & Blue Shield of Fla. Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997). In the light most favorable to Doe, the Court should evaluate the Appellees' Section 230 preclusion arguments, and then, the Appellant's facts and favorable inferences should override the Appellees''

---

[1] A Rule 12(b)(6) motion to dismiss tests whether the complaint provides: "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). *See Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174, 1179–80 (M.D. Ala. 2020). This "does not require 'detailed factual allegations.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court is "to draw on its judicial experience and common sense." *See Ashcroft v. Iqbol*, 556 U.S. 662, 679 (2009). A complaint should not be dismissed for failure to state claim unless no set of facts would entitle the plaintiff to relief. *See Twombly*, 550 U.S. at 570.

unsupported conclusions. This is especially true when there has been zero discovery and absolutely no opportunity to pierce the technology veil to uncover the inner workings of Grindr's algorithms, profit model, actual or constructive knowledge of sexual abuse of minors due to its website, application development and design, product design, content moderation, and monetization.

The following is one example of the District Court's erroneous parsing of the Appellant's pleading:

> Merely providing the forum where harmful conduct took place cannot… serve to impose liability onto [a provider]. *M.H. v. Omegle.com, LLC,* Case No. 8:21-cv-814-VMC-TGW, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022) (citing *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014)).

Doc. 50, p. 5. However, Appellants' Second Amended Complaint, states:

> Defendants had actual or constructive notice that minors had access to the site and, therefore, were vulnerable to sexual abuse. Nevertheless, GRINDR negligently failed to warn Plaintiff and/or Plaintiff's parents that users of GRINDR frequently use its site to sexually assault children. Grindr also failed to create reasonable safety measures to prevent minors from accessing the site or app. Thus, placing minors, including John Doe, in a foreseeable zone of risk of sexual abuse. Grindr could have anticipated John Doe's sexual abuse by Pritt, and had the ability to avoid the risk of sexual abuse to John Doe.

> Grindr knowingly risks children's safety and lives for profit. Upon knowing of the risk to minors, Grindr failed to implement reasonable measures, such as a warning or a stricter age verification mechanism, to lessen the risk or prevent minors from being exposed to potential sexual abuse or trafficking. As an application/ website that facilitates sex between its users and allows users to use geolocation features to locate other users, Grindr's unique sex-based platform poses a

significant threat to unsuspecting minors, or minors who cannot possibly fathom the repercussions of their actions.

Doc. 28, p. 8-9. Appellant did not allege that Appellees "merely provided the forum where the harmful conduct took place," but instead that they knowingly designed, created and maintained a website that exposed minors to sexual abuse, sex trafficking and exploitation, in pursuit of financial benefit. The District Court failed to consider or even mention Grindr's actual and/or constructive knowledge of the danger its website/ application posed to minors prior to Doe's sexual abuse in its Section 230 analysis. Undoubtedly the legislature did not intend to create blanket immunity under Section 230, including instances in which an adult, sex-based application or website financially benefit from exploitation and sexual abuse of minors; the latter is a factual basis for liability in this case and should not be ignored as plainly done by the District Court in its decision. Doc. 50 p. 5.

Most notably, the District Court made the following contradictory statement:

*If Defendants had not allowed John access to the app* and published his communication with Pritt, the two would not have met and the sexual assault would not have occurred.

Doc. 50 p. 5 (emphasis added). The District Court admittedly stated that "Defendants allowed John access […]," to Appellees' app. The District Court acknowledges the crucial fact that Defendants allowed Doe access to the app. This fact underscores the foundation of Doe's claims against the Defendants. Yet, the District Court ignores this allegation and its effect in its analysis, committing reversible error.

The cases relied on by the District Court in its decision are distinguishable and therefore, should not serve as a basis of dismissal. Similarly, the District Court failed to consider factually analogous cases, instructive in other District Courts.[2] Section 230 generally shields interactive computer services ("ICSs") from liability for content provided by third-party users. However, if the ICS itself has knowledge of a known danger and fails to take reasonable action to warn or protect users from the known danger, liability may still exist since the ICS has done more than "merely host" third-party content. Appellant is not alleging that Grindr should be held responsible for Pritt's communications, but that Grindr is liable for its own actions that allowed Doe access to Grindr's website/app, including utilizing a weak age verification system; misrepresentations concerning minors' access to its platform; and failure to warn of the known risk of sexual abuse to minors, resulting in his sexual assault. The Court should remain bound to well established precedent and accept the Appellant's facts as true and construe all favorable inferences in the light most favorable to Doe.

## SUMMARY OF ARGUMENT

This appeal concerns the scope and application of the bar on causes of action against ICSs set forth in Section 230. The District Court held that Doe's negligence and intentional infliction of emotional distress claims are barred by Section 230,

---

[2] This is a case of first impression in this jurisdiction.

based on the following language in the statute: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Contrary to the District Court's ruling, 47 U.S.C. § 230(c)(1) does not bar Doe's claims for Appellees' failure to warn of a known and serious danger, misrepresentation, and failure to maintain a reasonable age verification system. Importantly, the claims brought forth against Appellees do not involve third party content and do not treat Grindr as a "publisher or speaker" of third-party content. The District Court's decision to the contrary stretches the statutory language beyond any reasonable interpretation. Moreover, barring Doe's claims is contrary to precedent applying § 230(c) immunity.

Defendants, equivalent to panderers or traffickers, are attempting to skirt liability for their own misconduct pursuant to the CDA. This is dangerous, inconsistent and unsupported precedent by the District Court. This means that anyone can design, create and maintain an app or website, under the guise of an adult website, for the purpose of exploiting or trafficking children with impunity, while having superior knowledge it has essentially created an attractive nuisance. This is essentially what Defendants have accomplished with the lower court's decision. Congress never intended Section 230 to limit liability for misconduct that utilizes

the internet to facilitate and perpetuate child sexual abuse, for the purpose of financial benefit. Applicable case law, statutory history, and the plain language of Section 230 support the conclusion that Section 230 immunity does not apply in this case.

Doe's state claims, including failure to warn and implement a reasonable age verification system and misrepresentation, are otherwise entirely consistent with the purposes and intent of Section 230 to promote unfettered speech on the Internet and allow Internet service providers to self-regulate by screening and removing offensive content. Doe's claims do not interfere with, or otherwise affect free and unfettered communications on the internet. The District Court's decision to bar Doe's claims due to Section 230 ignores the statute's plain language, intent and public policy. Accordingly, the District Court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) of Doe's claims on the sole ground that Section 230 precludes it, is a clear error and must be reversed.

## **ARGUMENT**

## I. **SECTION 230 DOES NOT BAR DOE'S STATE CLAIMS**

Section 230 immunity is limited. For Section 230 to bar a claim against a defendant, the following elements must be demonstrated: (1) [Defendant] is a provider ... of an interactive computer service[3], (2) the claim is based on information

---

[3] This element is undisputed.

provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information.'" *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018), (internal quotation marks omitted) (quoting *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016)). The test is conjunctive, meaning all elements must be satisfied. Here, the last two elements of Section 230 are not satisfied.

Doe's claims are not based on information provided by another information content provider, and do not treat Defendants as publisher or speaker. Doe's state claims of negligence and intentional infliction of emotional distress are rooted in Defendants' misrepresentation, and failure to warn[4] and maintain a reasonable age verification system. Doe's claims are not precluded by Section 230.[5]

"The plain language of the [Section 230] [known as the good Samaritan exception] only provides immunity for actions 'voluntarily taken in good faith.'" 47 U.S.C. § 230(c)(2)(A); *E-Ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016). It is not blanket immunity afforded to ICSs. Consistently, the Supreme Court stated:

---

[4] The CDA states that ICSs have an obligation to notify its customers of parental control protections for the protection of children. Demonstrating that holding Defendants liable for failure to warn of a known danger to minors is consistent with CDA language and policy. 47 U.S.C. § 207(d).

[5] Section 230(e)(3) provides, that the CDA, shall not "prevent any State from enforcing any State law that is consistent with this section."

> [i]n short, the statute suggests that if a company unknowingly leaves up illegal third-party content, it is protected from publisher liability by §230(c)(1); and if it takes down certain third-party content in good faith, it is protected by §230(c)(2)(A). This modest understanding is a far cry from what has prevailed in court. Adopting the too-common practice of reading extra immunity into statutes where it does not belong […]

*Malwarebytes, Inc., Petitioner v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020) (observing that courts have departed from the most natural reading of the text by giving internet companies immunity for their own conduct). By definition, a "good Samaritan" is one who acts in good faith, is faultless, or blameless in a situation.

> Subsection (c)(2) immunizes only an interactive computer service's "actions taken in good faith." If the publisher's motives are irrelevant and always immunized by (c)(1), then (c)(2) is unnecessary. The Court is unwilling to read the statute in a way that renders the good-faith requirement superfluous.

*E-Ventures Worldwide, LLC*, 188 F. Supp. 3d 1265, 1273 (declining to interpret the CDA to provide immunity regardless of defendant's motives and deciding that interpreting "the CDA this way results in the general immunity in (c)(1) swallowing the more specific immunity in (c)(2).").

Doe's allegations, when taken as true, demonstrate that Grindr's actions are far from faultless or blameless; and the decision to immunize Grindr is in direct contradiction with Section 230 and public policy as a whole. *Id*.

### A.      Doe's Claims do not Treat Defendants as "Publisher or Speaker"

"A defendant seeking to enjoy the immunity provided by Section 230 must establish that […] the *causes of action treat defendant as a publisher or speaker of information* […]" *M.H.*, 2022 WL 93575, *7 (emphasis added). Section 230 precludes liability only by means of a definition or when the defendant is being treated as a "publisher or speaker." *Fla. Abolitionist v. Backpage.com, LLC*, 2018 U.S. Dist. LEXIS 55560, *10 (M.D. Fla. 2018) (citing *Barnes v. Yahoo, Inc.*, 570 F.3d 1096 (9th Cir. 2009); *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1314 (M.D. Fla. 2015). "[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes*, 570 F.3d 1096.

An analysis of Doe's claims reveals that the District Court's entire reasoning is mistaken. At no point in time has Doe sought to hold Defendants liable as a publisher or speaker. *M.H.,* 2022 WL 93575, at *5; *see also, Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (granting the motion to dismiss when "Plaintiff [sought] to hold Defendant responsible for failing to monitor its website: in the Complaint, Plaintiff repeatedly characterized Defendant's wrongdoing as "failing to properly supervise its site"). "To sum up, even if [Grindr] is acting as a publisher in releasing [Grindr] and its various features to the public, [Plaintiff's]

claim still rests on nothing more than [Grindr's] 'own acts.'" *Fair Hous. Council v. Roommates.com*, *LLC*, 521 F.3d 1157, 1165 (9th Cir. 2008) (citing *Lemmon v. Snap, Inc.*, 995 F.3d at 1090 (9th Cir. 2021).

The lower court determined Doe was treating Grindr as a publisher or speaker relying on inapposite cases. Doc. 50, p. 5. First the District Court relied on *In re Facebook, Inc.*, 625 S.W.3d 80, 93 (Tex. 2021), where the Texas state court held that Section 230 immunity applied when the plaintiff alleged that Facebook failed to implement safeguards to prevent adults from contacting minors, report suspicious messages, warn of sex traffickers, or identify sex traffickers on its website. The court found that these claims treat Facebook as the publisher or speaker of third-party communication and are therefore barred; specifically, because it required the monitoring or posting of content. *Id.* Further, the District Court incorrectly reasoned that Doe's claims are inextricably linked to Defendant's publications of Pritt's communications to Doe, citing *Herrick*, 306 F. Supp. 3d 579, 588, where an adult male plaintiff sought to hold Grindr at fault for defamatory posts created by his ex-boyfriend. In *Herrick*, the basis of the claim were the defamatory posts themselves.

Doe's claims are completely distinguishable. The instant case is likened to an adult sex store which negligently allows minors access. The adult sex store would be held liable for allowing entry of a minor into the store, not for the adult content contained in the store itself. Similarly, Doe's claims seek liability for Grindr's

negligence in allowing access to Doe to its adult sex app, and not for the content of Pritt's message itself. Here, Doe's claims are rooted in Grindr's failure to prevent him – a minor – access to an inherently dangerous adult application whereas the plaintiff in *In re Facebook* sought liability against Facebook due to its failure to monitor third party content. Unlike in *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), where the court held that "because of the "staggering" amount of information communicated through interactive computer services, providers cannot prescreen each message they republish," Doe's claims would not require such efforts. *Id.*; *see also*, *Dimeo v. Max*, 433 F. Supp. 2d 523, 528 (E.D. Pa. 2006) (noting "that without [Section 230] protection, interactive computer services would either have to employ an army of highly-trained monitors to patrol its services, or shut down internet forums altogether"); *see also*, *Anderson v. Tiktok, Inc.*, 2022 U.S. Dist. LEXIS 193841, *9 (E.D. Pa. 2022) (holding that Section 230 did not apply as defendant's purported duty to warn "[did] not arise from an alleged failure to adequately regulate access to user content," and would not "affect how [the defendant] publishes or monitors such content."). Like in *Lemmon*, Grindr could have "satisfied its alleged obligation—to take reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that [Grindr] users generate." 995 F.3d at 1090 (internal citations omitted) (denying the motion to dismiss upon finding that the danger was not from the post itself).

Simply, Doe's claims do not necessitate the monitoring of third-party content. Rather, that Grindr adopt a reasonable age verification system, issue warnings about known risks, and refrain from misrepresenting minors' access to its platform.

Indeed, ample precedent reveals that Doe's negligence and IIED claims, stemming from Defendants' misrepresentation of minors' accessibility of the Grindr platform, and Defendants' failure to warn of a known danger and implement a reasonable age verification system, are outside the scope of Section 230 immunity. *M.H.*, 2022 WL 93575, at *5 (stating that "Section 230 shields websites from liability against 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online'") (citing *Whitney Info. Network, Inc. v. Verio, Inc.*, 2006 U.S. Dist. LEXIS 1424 (M.D. Fla. Jan. 11, 2006); *Lemmon*, 995 F.3d 1085, 1090 (holding that the fact that "Snap allows its users to transmit user-generated content to one another does not detract from the fact that the Parents seek to hold Snap liable for its role in violating its distinct duty to design a reasonably safe product."); *Camacho v. Control Grp. Media Co., LLC*, 2022 U.S. Dist. LEXIS 140211, *41 (S.D. Cal. 2022) (holding that "[w]hat matters when we assess this element is 'whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another'"); *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) (holding that Section 230 immunity did not apply to the plaintiff's failure to warn claim as it was not within

the publisher or speaker role); *Barnes*, 570 F.3d 1096 ( (rejecting Section 230 immunity in a promissory estoppel claim since the claim did not seek to hold the defendant liable as a publisher or speaker of third-party content, who promised to remove the content and then breached the promise); *see also, Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) (finding that "clear illustration of a cause of action that treats a website proprietor as a publisher is a defamation action founded on the hosting of defamatory third-party content."); *Lansing v. Southwest Airlines Co.*, 2012 Ill. App. LEXIS 458, *1 (1st DCA 2012) (holding that § 230(c) did not apply to plaintiff's negligent supervision claim because any issue concerning whether the airline acted like a publisher or speaker of the offensive material was irrelevant to plaintiff's claim); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019) (denying the plaintiff's claims since her allegations rested entirely on Defendants' presentation of "dangerous and deadly videos" created by third parties and uploaded by TikTok users); *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (holding that "[c]ourts will find this element to be satisfied where a plaintiff's claim alleges that an ICS provider should have screened or filtered information provided by their users"); *City of Chicago v. StubHub!, Inc.*, 624 F.3d at 366 (7th Cir. 2010) (noting that § 230(c)(1) merely "limits who may be called the publisher of information that appears online," and while that "might matter to liability for defamation, obscenity, or copyright infringement," that does not mean

it will be appropriate elsewhere); *Saponaro*, 93 F. Supp. 3d 319, 323 (holding CDA immunity applied when the plaintiff alleged that Grindr failed to properly supervise its site).

The District Court failed to recognize, that, as in *Barnes*, *Internet Brands*, and *Lansing*, Grindr's common law duty is not dependent on its status as a "publisher" of content. The District Court's conclusion is a clear deviation from precedent in determining whether Section 230 immunizes Grindr. Grindr had a duty to warn, refrain from misrepresentation and reasonably maintain an age verification system, upon having actual/ constructive knowledge of a risk of sexual abuse to minors irrespective of its role as a publisher of third-party content. The promise in *Barnes*, the failure to warn in *Internet Brands,* and the negligent supervision claim in *Lansing* that fell beyond the scope of § 230(c)(1), are conceptually no different from the claims in the instant case. *Internet Brands, Inc.*, 824 F.3d 846; *Barnes*, 570 F.3d 1096; *Lansing*, 2012 Ill. App. LEXIS 458, *1. Grindr's actions, in the face of superior information posing a grave danger to minors, is not a publishing decision regarding third party content, nor does it implicate any such publishing decision. The publication of third-party content from Grindr members is peripheral to, and unaffected by the tort theories of liability alleged in the instant case. Applying the analysis set forth, the conclusion is unavoidable that Plaintiff's claims do not derive

from Grindr's status as a "publisher or speaker." The District Court's conclusion to the contrary is therefore in error.

Like the *Lemmon* Court declared of Snap, Grindr "'is an internet publishing business. Without publishing user content, it would not exist. But though publishing content is a but-for cause of just about everything [Grindr] is involved in, that does not mean that the [Plaintiff's] claim, specifically, seeks to hold [Grindr] responsible in its capacity as a publisher or speaker." 995 F.3d at 1090 (internal citations omitted). If the Legislature meant for Grindr to be immunized simply because it is considered an ICS provider, the other two elements would be rendered superfluous and unnecessary. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 373 (2013) (holding that the "canon of statutory construction against surplusage is strongest when an interpretation would render superfluous another part of same statutory scheme"). Further, it is not fathomable that the Legislature meant to allow an ICS provider to engage in misconduct with impunity for the simple fact that it is an ICS Provider. *Lemmon*, 995 F.3d at 1090 (holding that "[b]ecause the Parents' claim does not seek to hold Snap responsible as a publisher or speaker, but merely seeks to hold Snapchat liable for its own conduct, principally for the creation of the Speed Filter, § 230(c)(1) immunity is unavailable") (internal citations omitted).

There is no precedent with identical facts to the instant case: an adult, sex-based application/website being held liable for negligently allowing minors access

to its site, upon having constructive and actual knowledge of sexual abuse of minors who access their site. [6] The most analogous case is *Internet Brands*, arguably a landmark case for tech, cited in over 40 courts nationwide. Paradoxically, it is one of the only cases not cited to, or addressed in the lower court's decision.

In *Internet Brands*, the Ninth Circuit held that Section 230 did not immunize the defendant from Jane Doe's claims as she did not seek to hold Internet Brands liable as a "publisher or speaker" of content someone posted, or for Internet Brands' failure to remove content posted on the website, but instead, for its failure to warn of a known danger of sexual abuse to it is users. There, as here, the defendant knew of the risk of sexual abuse to women on its site, but failed to warn its users. *Internet Brands, Inc.*, 824 F.3d 846; *see also Maynard v. Snapchat, Inc.*, 346 Ga. App. 131, 136 (Ga. Ct. App. Oct. 30, 2020) (acknowledging that the plaintiff in *Internet Brands, Inc.* "sought to hold Internet Brands liable based on its knowledge of the rape scheme [,] and for failing to generate its own warning.") (internal citations omitted).

---

[6] The instant case is noteworthy. The public has had access to the internet since 1991. Over thirty years later, the Court has the privilege of deciding a matter with a unique set of facts that has not been litigated on a federal level. The Court's holding in this case will continue to shape the rapidly evolving internet world, and set the standard for sex-based applications or websites for protection of minors. The safety benefits are far-reaching.

The lower court fails to address Doe's individual causes of actions in its flawed analysis. First, Doe's negligence claim is based on Defendants owing Doe a duty after placing him in a foreseeable zone of risk of sexual abuse when failing to warn and implement a reasonable age verification feature, resulting in Doe's sexual abuse. Second, Doe's IIED claim is based on Grindr knowingly risking children's safety and lives for financial gain. Knowing the risk to minors, Grindr misrepresented the ability of minors to create accounts, failed to warn of the known dangers of sexual abuse, and failed to implement reasonable safety measures, such as a stricter age verification mechanism to lessen the risk to minors of sexual abuse or trafficking. Here, Plaintiff's claims do not pertain to Grindr's traditional editorial functions relating to publishing, withdrawing, postponing or altering content. The acts of refraining from misrepresentation, warning of a known danger, and implementing a reasonable age verification system are not matters publishers undertake, and therefore, are not barred by Section 230.

## B. Doe's Negligence and IIED Claims Are Not Based on Third-Party Content

In jurisdictional cases where courts have found that third party communications are involved, the actual publication of a third-party user's posts caused the harm, and the causes of actions depended on the content of the posts themselves. *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361-67 (S.D. Fla. 2022) (holding that craigslist's failure to prevent or remove the postings is precisely

the type of conduct Congress sought to immunize."); *Rodriguez v. OfferUp, Inc.*, 2019 U.S. Dist. LEXIS 247480, *8 (M.D. Fla. 2019) (granting Section 230 immunity when plaintiff sought to hold defendant liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content); *Whitney Info. Network, Inc., LLC*, 2008 U.S. Dist. LEXIS 11632, *1 (holding that the defendant was immune from the plaintiff's claims because it failed to rebut evidence "that the consumer postings being litigated were created by third parties"); *Am. Income Life Ins. Co. v. Google, Inc.*, 2012 U.S. Dist. LEXIS 190487, *8-9 (N.D. Ala. 2012) (holding that Section 230 immunity applied to plaintiff's claims since the content of the "allegedly 'disparaging and/or misleading representations' upon which the Complaint is based was created by the third-party websites and not Google").

Continuing in this vein, the instant case is distinguishable from all jurisdictional cases and *Julie Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561 (2009), relied on by the District Court, where Section 230 immunity was applied. Section 230 immunity does not apply in this case because there was no third-party user content as the basis of the claim since plaintiff seeks to hold Defendants liable for their own conduct, principally for failure to warn and implement a reasonable age verification system, and misrepresentation. Pritt's communication via the Grindr platform is incidental to, and not the basis of Plaintiff's claim, such that to bar

Plaintiff's claim is to take § 230(c)(1) into the realm of sweeping immunity rejected by precedent. *Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15; *Internet Brands, Inc.*, 824 F.3d 846 (advising that "we must be careful not to exceed the scope of the immunity provided by Congress. Congress could have written the statute more broadly, but it did not."). On this basis alone, Section 230 immunity does not apply.

Doe's claims of negligence and IIED stem from Grindr's shortcomings and not from third-party content. Doe's allegations highlight Grindr's knowledge of the risk the platform presented to minors and Grindr's misrepresentations about minor access, coupled with failure to warn of known dangers, and an ineffective age verification system. Doe's claims are unrelated to any interactions between Pritt and Doe before the assault. In *MySpace, Inc.*, the Court held that the plaintiff's allegations that MySpace was "liable for its failure to implement measures that would have prevented [the plaintiff] from communicating with [her attacker was] merely another way of claiming that MySpace was liable for publishing the communications" between them. *MySpace, Inc.*, 175 Cal. App. 4th 561. Here, Doe has alleged no such thing. Instead, Plaintiff alleged:

> Defendants *had actual or constructive notice that minors had access to the site* and, therefore, were vulnerable to sexual abuse. Nevertheless, GRINDR negligently *failed to warn* Plaintiff and/or Plaintiff's parents that users of GRINDR frequently use its site to sexually assault children. Grindr also failed to create reasonable safety measures to prevent minors from *accessing* the site or app. Thus, placing minors, including John Doe, in a foreseeable zone of risk of sexual abuse.

> Grindr could have anticipated John Doe's sexual abuse by Pritt, and had the ability to avoid the risk of sexual abuse to John Doe.

Doc. 28 ¶ 36 (emphasis added). Plaintiff does not claim that Grindr was negligent for failing to restrict or limit communications on its website. Instead, Doe's claims are limited to his initial access to the Grindr app/website. Doe's allegations rest upon Grindr's unique position to warn minors of a known danger and prevent further harm. *MySpace, Inc.*, 175 Cal. App. 4th 561 (barring suit under the Section 230 for the same reason, since plaintiffs "want[ed] MySpace to ensure that sexual predators do not gain access to (i.e., communicate with) minors"). It is important to note that *MySpace*, unlike Grindr, is not a sex-based app/website, thus, operating under a different standard for access by minors.

> Grindr is a dating application that facilitates sexual encounters between its users. Consistently, when accessing the Grindr website, there is an autoplay video of six men in underwear, with a clear imprint of their private areas, caressing each other in a sexual manner.

Doc. 28 ¶¶ 13, 18. Had there been no access by Doe *ab initio*, he would have never met Pritt. Like in *A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814, 821 (D. Or. 2022), the defects alleged here also concern minors' abilities to access online platforms. *Id.* (holding that CDA immunity did not apply because the claim did not rest on third party communications, but instead rests on Omegle connecting minor children and adult men, and that it does so before any content is exchanged between them); *see also In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, 2023

U.S. Dist. LEXIS 203926, (stating "[D]efendants could meet this duty without making any changes to how they publish content, by providing warnings for any and all of the alleged defects.)". Thus, the basis of Doe's claims against Defendants lies in Doe's access to the adult sex-based platform, with no warning to parents, not Pritt's communications themselves. Because Pritt's posts are not the basis of Doe's claims, the third element of Section 230 is not satisfied.

## II. PUBLIC POLICY AND LEGISLATIVE INTENT REQUIRE A REVERSAL OF THE DISTRICT COURT'S DECISION

The District Court recognizes that "[t]he purpose of § 230 statutory immunity is to 'maintain the robust nature of Internet communication' and to avoid the 'obvious chilling effect' that would result from the specter of tort liability on service providers for millions of postings by third parties." *McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023). However, the facts of the instant case will not have a chilling effect on the internet. First, plaintiff's claims would not result in tort liability for millions of postings. Perchance, it would have the opposite effect and serve to prevent future lawsuits as Plaintiff's claims rest solely on Grindr's role as gatekeeper. Implementing corrective measures to prevent minors from accessing the website would significantly decrease, or eliminate altogether, the number of minors accessing the website; whereby reducing future claims involving minors. Second, Grindr is not a regular service provider, it is an adult, sex-based app/website and thus, this standard would not apply to other types of service providers that do

not exist to sell sex. Finally, specifically applied to this case, sexual predators would not have unfettered access to communicate with minors via an adult sex-based app/website in order to engage in sexual acts. This is consistent with making the internet safer and, therefore, plays a role in the internet's growth and development, affecting the "robust nature of communications," but in a positive way. Certainly, this is exactly what the goal should be for the safety of our children, and ultimately, society as a whole: for there to be a chilling effect on communications between sexual predators and children. "[T]he information superhighway should not become a red-light district." 141 Cong. Rec. S1953 (daily ed. Feb. 1, 1995) (statement of Sen. Exon). Relevant "portions of section 230's legislative history […] showed that, although Congress intended to encourage the growth of the young Internet, that purpose was subsidiary to and separate from the goal of protecting children." Lukmire, *Can the Courts Tame The Communications Decency Act?: The Reverberations of Zeran v. America Online*, 66 N.Y.U. Ann. Surv. Am. L. 371 (2010). Unquestionably, the lower court has gone against the "traditional and transcendent interest in protecting the welfare of children." *Maryland v. Craig*, 497 U.S. 836, 840 (1990).

## III. DEFENDANTS MATERIALLY CONTRIBUTED TO THE ILLEGALITY OF PRITT'S CONDUCT RESULTING IN PLAINTIFF'S SEXUAL ABUSE

In the event that this Court determines Plaintiff was challenging Grindr's publication of content, this Court should still reverse the District Court's decision. Section 230's shield protects defendants when they do not act as "information content providers" with respect to disputed content. Under Section 230, "[e]ven if the data [is] supplied by third parties, a website operator may still contribute to the content's illegality and thus be liable as a developer." *Doe v. MG Freesites, Ltd.*, 2022 U.S. Dist. LEXIS 23199, *48, 49 (N.D. Ala. 2022). "A website helps to develop unlawful content, and thus falls within the exception to Section 230, if it ***contributes materially*** to the alleged illegality of the conduct." *Id.* (emphasis added).

In the alternative, Plaintiff sufficiently alleged that Defendants materially contributed to the illegality of Pritt's conduct and are "responsible for what [made] the displayed content allegedly unlawful." *Id.* "In short, [Grindr] is being sued for the predictable consequences of designing [Grindr] in such a way that it allegedly encourages dangerous behavior." *Lemmon*, 995 F.3d 1085, 1094; *see also, Saponaro*, 93 F. Supp. 3d 319, 323 (holding that the plaintiff failed to allege how Grindr contributed to the illegality of the content); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009) (Tymkovich, J., concurring) (stating that § 230 should not apply when the plaintiff sues over a defendant's "conduct rather than for the content of the information").

In *MG Freesites, Ltd.*, the Eleventh Circuit Court denied the motion to dismiss when the defendant had actual notice of child pornography distributed on the site; financially benefited from child sexual abuse material and turned a blind eye to child pornography; the defendant generated tags, categories or key words that users wishing to post child sexual abuse material can use; and their moderators were discouraged from flagging child sex abuse material. *MG Freesites, Ltd.*, 2022 U.S. Dist. LEXIS 23199, *57 (denying the defendant's motion to dismiss).

Contrary to allegations supporting the opposite, the lower court held that Plaintiff failed to plead facts to show that Defendants contributed to illegality of Pritt's messages, citing to *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009). Doc. 50, p. 6. Similar to *MG Freesites, Ltd.*, Doe alleged that Grindr encourages illegal content: Defendants operate a sex-based platform with a geolocation feature[7] that is known to facilitate sex among users; Defendants had actual or constructive notice that sexual predators and sex traffickers were targeting minors on Grindr who easily bypassed the age verification system; Grindr misrepresents[8] children's ability to sign up on the Grindr application or

---

[7] Geolocation feature is a content neutral tool. "[C]ase law has never suggested that internet companies enjoy absolute immunity from all claims related to their content-neutral tools" and "those who use the internet thus continue to face the prospect of liability, even for their neutral tools, so long as plaintiffs' claims do not blame them for the content that third parties generate with those tools." *Lemmon*, 995 F.3d at 1094. (internal citations omitted).

[8] "Internet companies remain on the hook when they create or develop their own internet content." *Lemmon*, 995 F.3d at 1093. Grindr's misrepresentation is its own content and should not, therefore, fall under the CDA.

website; Grindr encourages anonymity or "incognito" features through its unlimited services, allowing predators or traffickers to maintain anonymity; Grindr Terms and Condition of Service contain over 16,900 words, yet, it contains no warning of the risk or danger of sexual abuse of minors by sexual predators when accessing the platform; upon having actual notice that children were being targeted via the Grindr platform by adult users, Grindr has refused to implement a more reasonable age verification system to not only prevent minors from accessing the platform, but also prevent sexual predators and sex traffickers from having, yet another way to access vulnerable children; and that Grindr financially benefits from continuing to conduct business in this manner, willfully turning a blind eye to underage users. Doc. 28, ¶¶ 16, 17, 18, 19, 20, 21, 22, 25, 26.

Given the fact that Grindr is a platform that facilitates sex, and maintains an almost nonexistent age verification measure without reasonable warning of foreseeable sexual abuse or trafficking of minors, Grindr has *knowingly* and *intentionally* created and maintained a black market for sexual predators and traffickers; driving the number of subscribers to increase. Grindr is not ignorant to the financial benefit of serving children on a silver platter to predators and traffickers alike. Thus, like in *MG Freesites, Ltd.*, Grindr *materially contributes* by designing its platform for an illicit purpose. *Id*. *See also, J.S. v. Vill. Voice Media Holdings, LLC*, 184 Wn.2d 95, 119 (Wash. Sept. 3, 2015) (concluding that allegations that the website at issue developed and posted guidelines and content rules that facilitated

child prostitution were sufficient to withstand a motion to dismiss based on the CDA). Plaintiff has sufficiently pleaded that Defendants did "something more than a website operator performs as part of its traditional editorial function." *Nemet Chevrolet, Ltd.*, 591 F.3d 250, 258. As such, Doe's Complaint is sufficient to withstand a motion to dismiss based on Section 230.

Defendants cannot, on the one hand, hold Grindr out to its users and investors as an application for sex for profitability and on the other hand, when faced with litigation, equate itself with social media platforms such as MySpace, Facebook, AOL, and Kik. Grindr is likened "to other kinds of ICSs that were aptly described in a similar case as 'the river[s] through which internet sexual trafficking flows.'" *M.A. ex rel. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1055 (E.D. Mo. 2011). A sex-based application like Grindr must take reasonable safety measures when it comes to minors because more is at stake.[9] When signing up, Grindr users reasonably expect to be exposed to sexual content and solicited for sex, and have access to user locations. Thus, it is just a matter of when, not if, a minor will be exposed to the dangers of sexual abuse or trafficking upon accessing the platform.

---

[9] Consistently, many states have enacted age verification laws in order to access adult content online to protect minors from exposure to pornography. Ark. Code § 4-88-1104; La R. S. § 2800.28(B)(1); Miss. Code Ann. § 11-77-3; MCA § 30-14-159; Tex. Civ. Prac. & Rem. Code § 129B.003; Utah Code Ann. § 78B-3-1002; Va. Code Ann. § 8.01-40.5.

The only actions Doe seeks to hold Defendants responsible for, are their own. If the Court were to agree with Defendants, that Doe's claims do indeed derive from Pritt's communications, it must also agree with the fact that the complaint sufficiently alleges Grindr materially contributed to the illegality of Pritt's conduct. Due to Grindr's almost nonexistent age verification system, sexual predators and traffickers worldwide are aware that Grindr is a blind spot, where unsuspecting minors are targeted and harmed; Defendants are essentially asking the Court to be implicit in turning Grindr into a black market for predators and traffickers.

"Because Defendant's entitlement to immunity under the [Section 230] depends on whether Defendant 'developed' or materially contributed [to the illegality], it is too early at this juncture to determine whether [Section 230] immunity applies." *CYBERsitter, LLC v. Google Inc.*, 905 F. Supp. 2d 1080 (C.D. Cal. 2012) (cited in *Fla. Abolitionist*, 2018 U.S. Dist. LEXIS 55560, *11; *see also FTC v. LeanSpa, LLC*, 920 F. Supp. 2d 270, 275 (D. Conn. 2013) (holding that the "Court cannot conclude from the face of the Amended Complaint that the […] defendants are entitled to immunity under [Section 230]"); "Taking Plaintiff's allegations as true, Defendants are not entitled to immunity under [Section 230] at this stage of the case.". *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1145 (D. Ariz. 2005)

## **CONCLUSION**

For all the foregoing reasons, the Court should vacate the District Court's order dismissing this case and remand this matter for a determination on the merits.

Dated: February 7, 2024
   Boca Raton, FL

       Respectfully submitted,


       /s/ Krisel McSweeney
       Krisel McSweeney
       Florida Bar No.: 112637
       MCSWEENEY LAW FIRM
       5550 Glades Road, Suite 500
       Boca Raton, Florida  33431
       (800) 540-0668 – Telephone
       (561) 961-5191 – Facsimile
       Kmcsweeney@mcsweeneylawfirm.com

       *Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

> this brief contains <u>7,899</u> words, excluding those parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Office Word</u> in <u>Times New Roman</u>, <u>14-point</u>.

Dated:     February 7, 2024
     Boca Raton, FL

               Respectfully submitted,

               <u>/s/ Krisel McSweeney</u>
               Krisel McSweeney
               Florida Bar No.: 112637
               MCSWEENEY LAW FIRM
               5550 Glades Road, Suite 500
               Boca Raton, Florida  33431
               (800) 540-0668 – Telephone
               (561) 961-5191 – Facsimile
               Kmcsweeney@mcsweeneylawfirm.com

               *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 7, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

Dated:      February 7, 2024
        Boca Raton, FL

                        Respectfully submitted,

                        /s/ Krisel McSweeney
                        Krisel McSweeney
                        Florida Bar No.: 112637
                        MCSWEENEY LAW FIRM
                        5550 Glades Road, Suite 500
                        Boca Raton, Florida  33431
                        (800) 540-0668 – Telephone
                        (561) 961-5191 – Facsimile
                        Kmcsweeney@mcsweeneylawfirm.com

                        *Counsel for Appellant*