**Case No. 23-13874**

_____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

MOTHER DOE on behalf of JOHN DOE,

*Plaintiff-Appellant,*

vs.

GRINDR LLC AND GRINDR HOLDINGS LLC

*Defendants-Appellees.*

_____

On appeal from the United States District Court
Middle District of Florida, Ocala Division
Case No. 5:23-cv-00193-JA-PRL

_____

## BRIEF OF APPELLEES
## GRINDR LLC and GRINDR HOLDINGS LLC

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-8618
Facsimile:  (213) 633-6899

Lawrence G. Walters
WALTERS LAW GROUP
195 W. Pine Ave.
Longwood, Florida  32750-4104
Telephone:  (407) 957-9150
Facsimile:  (407) 744-6151

Ambika Kumar
Sara A. Fairchild
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone:  (206) 622-3150
Facsimile:  (206) 757-7700

*Counsel for Appellees*
*Grindr LLC and Grindr Holdings LLC*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, counsel for Appellees, Grindr LLC and Grindr Holdings LLC, certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations that have or may have an interest in the outcome of this action, including subsidiaries, conglomerates, affiliates, parent corporations, publicly traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case:

A)      Antoon, John – Senior District Judge, Middle District of Florida

B)      Davis Wright Tremaine LLP – Law Firm for Appellees

C)      Doe, John – Appellant, by and through Mother Doe

D)      Doe, Mother – Appellant, on behalf of John Doe

E)      Fairchild, Sara – Attorney for Appellees

F)      Gold, Loren L. – Attorney for Appellant

G)      Grindr LLC – Appellee

H)      Grindr Capital LLC – sole member of Appellee Grindr Holdings LLC

I)      Grindr Gap LLC – sole member of Grindr Capital LLC

J)      Grindr Group LLC – sole member of Grindr Gap LLC

K)      Grindr Holdings LLC – Appellee

L)      Grindr Inc. (GRND) – sole member of Grindr Group LLC

M)      Hach Rose Schirripa & Cheverie, LLP – Law Firm for Appellant

N)      Kumar, Ambika – Attorney for Appellees

O)      Loren L. Gold, P.A. – Law Firm for Appellant

P)      McSweeney Law Firm – Law Firm for Appellant

Q)      McSweeney, Krisel – Attorney for Appellant

R)      Nappi, Hillary – Attorney for Appellant

S)      Sieff, Adam – Attorney for Appellees

T)      Walters Law Group – Law Firm for Appellees

U)      Walters, Lawrence G. – Attorney for Appellees

Grindr LLC and Grindr Holdings LLC certify that each is an indirect wholly owned subsidiary of Grindr Inc. (GRND), which is a publicly traded company with no parent corporation.  No publicly held corporation owns 10% or more of Grindr Inc.'s stock.

Case No. 23-13874
*Mother Doe v. Grindr, LLC, et al.*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Because the district court correctly dismissed Appellant Mother Doe's claims based on nearly uniform case law, Grindr LLC and Grindr Holdings LLC believe oral argument is not necessary for the resolution of this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

    DISCLOSURE STATEMENT ........................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF CONTENTS ................................................................. ii

TABLE OF CITATIONS .............................................................. iv

STATEMENT OF JURISDICTION .............................................1

STATEMENT OF THE ISSUES ..................................................2

INTRODUCTION ........................................................................3

STATEMENT OF THE CASE ......................................................5

    I.      Factual Background ........................................................5

    II.     Procedural History ........................................................8

    III.    Standard of Review ......................................................9

SUMMARY OF THE ARGUMENT .............................................9

ARGUMENT..............................................................................10

    I.      The District Court Correctly Held That Section 230 Bars Doe's

          Claims...........................................................................10

          A.    The Elements of Section 230 Immunity Are Established. ..13

               1. Grindr Is an Interactive Computer Service Provider......14

               2. Plaintiff's Claims Treat Grindr as a Publisher. ..............14

        3. Plaintiff's Claims Are Based on Content Provided by

          Pritt, Another Information Content Provider. ...............23

    B. Applying Section 230 Supports Congressional Policy........26

II. The First Amendment Bars Plaintiff's Claims............................28

III. Plaintiff Fails to Allege Necessary Elements of Her Claims........32

    A. Plaintiff's Negligence Claim Fails Because Grindr Did Not

      Owe John Doe a Legal Duty.................................................32

    B. Plaintiff Cannot State an IIED Claim Because Grindr's

      Publishing Activity Was Not Outrageous. ..........................35

    C. Plaintiff's "Misrepresentation" Theory Fails. ....................37

CONCLUSION................................................................................................39

CERTIFICATE OF COMPLIANCE ............................................................41

CERTIFICATE OF FILING AND SERVICE..............................................42

# TABLE OF CITATIONS

**Page(s)**

**Federal Cases**

*A.M. v. Omegle.com, LLC*,
  614 F. Supp. 3d 814 (D. Or. 2022) .................................................................23

\* *ACLU v. Mukasey*,
  534 F.3d 181 (3d Cir. 2008) ...........................................................................31

*Al-Ahmed v. Twitter, Inc.*,
  648 F. Supp. 3d 1140 (N.D. Cal. 2023)..........................................................28

\* *Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ................................................................11, 13

*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*,
  418 F.3d 600 (6th Cir. 2005) ..........................................................................29

*Anderson v. TikTok, Inc.*,
  637 F. Supp. 3d 276 (E.D. Pa. 2022).........................................................21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................25

\* *Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) .............................................................11, 14, 15

*Beckman v. Match.com, LLC*,
  743 F. App'x 142 (9th Cir. 2018) ....................................................................35

*Bride v. Snap Inc.*,
  2023 WL 2016927 (C.D. Cal. Jan. 10, 2023)............................................22, 25

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .............................................................4, 13, 26

*Counterman v. Colorado*,
  600 U.S. 66 (2023)...........................................................................................31

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) .........................................................................6

iv

*Diep v. Apple, Inc.*,
2024 WL 1299995 (9th Cir. Mar. 27, 2024) ........................................................21

*Dimeo v. Max*,
433 F. Supp. 2d 523 (E.D. Pa. 2006), *aff'd*, 248 F. App'x 280 (3rd Cir. 2007)
......................................................................................................................4

*Doe #1 v. MG Freesites, LTD*,
676 F. Supp. 3d 1136 (N.D. Ala. 2022)........................................................4, 25

*Doe ex rel. Roe v. Snap, Inc.*,
2022 WL 2528615 (S.D. Tex. July 7, 2022), *aff'd*, 2023 WL 4174061 (5th Cir. June 26, 2023) ................................................................................................21

*Doe ex rel. Roe v. Snap, Inc.*,
2023 WL 4174061 (5th Cir. June 26, 2023)........................................................12

* *Doe v. Grindr Inc.*,
--- F. Supp. 3d ----, 2023 WL 9066310 (C.D. Cal. Dec. 28, 2023)
................................................................ 12, 14, 17, 18, 21, 22, 23, 25

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ....................................................................19, 20

*Doe v. Kik Interactive, Inc.*,
482 F. Supp. 3d 1242 (S.D. Fla. 2020) ..............................................................12

* *Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ................................... 11, 12, 13, 16, 17, 18, 19, 22

*Doe v. SexSearch.com*,
502 F. Supp. 2d 719 (N.D. Ohio 2007), *aff'd*, 551 F.3d 412 (6th Cir. 2008) ....35

*Doe v. Twitter, Inc.*,
555 F. Supp. 3d 889 (N.D. Cal. 2021), *aff'd in part & rev'd in part on other grounds*, 2023 WL 3220912 (9th Cir. May 3, 2023)........................................21

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2560 (2023) ...........12, 28

*Dyroff v. Ultimate Software Grp., Inc.*,
2017 WL 5665670 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) ................................................................................................................33

\* *Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ..........................................................4, 17, 25, 35

\* *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..........................................................4, 10, 14, 24

\* *Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) .....................................................................13, 25

*FTC v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016) ...................................................................14, 26

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020) ..................................................................11

*Garcia v. Carnival Corp.*,
    838 F. Supp. 2d 1334 (S.D. Fla. 2012) ....................................................36, 37

*Gonzalez v. Google LLC*,
    No. 21-1333, 2023 WL 373840 (U.S. filed Jan. 19, 2023) ...............................27

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003) .........................................................................4

*Hart v. United States*,
    894 F.2d 1539 (11th Cir. 1990) ....................................................................36

*Henley v. Payne*,
    945 F.3d 1320 (11th Cir. 2019) .....................................................................9

*Herrick v. Grindr LLC*,
    306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019)
    ......................................................................................14, 18, 19, 33

\* *Herrick v. Grindr, LLC*,
    765 F. App'x 586 (2d Cir. 2019) ................ 13, 15, 16, 17, 18, 19, 20, 22, 25, 28

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
    --- F. Supp. 3d ----, 2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ...................22

*Jackson v. Airbnb, Inc.*,
    2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) ..................................................22

\* *Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016)....................................................12, 16, 25

\* *Jones v. Dirty World Ent. Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ....................................................13, 24

*L.H. v. Marriott Int'l, Inc.*,
604 F. Supp. 3d 1346 (S.D. Fla. 2022)..............................................25

*L.W. ex rel. Doe v. Snap Inc.*,
675 F. Supp. 3d 1087 (S.D. Cal. 2023)........................................21, 22

*Labzda v. Purdue Pharma, L.P.*,
292 F. Supp. 2d 1346 (S.D. Fla. 2003)..............................................33

\* *Lee v. Clorox Int'l Co.*,
466 F. App'x 826 (11th Cir. 2012)....................................................32

*Lemmon v. Snap, Inc.*,
995 F.3d 1085 (9th Cir. 2021) .............................................19, 21, 24

*Levitt v. Yelp! Inc.*,
2011 WL 5079526 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir.
2014) ............................................................................................11

*Lewis v. Time Inc.*,
83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) ...............30

*Lorillard v. Pons*,
434 U.S. 575 (1978).......................................................................28

*M.A. ex rel. v. Village Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041 (E.D. Mo. 2011) .............................................4

*M.H. v. Omegle.com, LLC*,
2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ..................................12, 23

*M.L. v. Craigslist Inc.*,
2020 WL 6434845 (W.D. Wash. Apr. 17, 2020), *report & recommendation
adopted by* 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020)
......................................................................................................35

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,
 141 S. Ct. 13 (2020) (Thomas, J., statement) ....................................28

*Marquez v. Amazon.com, Inc.*,
 69 F.4th 1262 (11th Cir. 2023) ...........................................................9

*Martin v. Baer*,
 928 F.2d 1067 (11th Cir. 1991) ........................................................36

\* *McCall v. Zotos*,
 2023 WL 3946827 (11th Cir. June 12, 2023)..................10, 13, 24, 28

*McConnell v. FEC*,
 540 U.S. 93 (2003) ............................................................................31

*N.Y. Times Co. v. Sullivan*,
 376 U.S. 254 (1964)...........................................................................31

*Negron v. Celebrity Cruises, Inc.*,
 2018 WL 3369671 (S.D. Fla. July 10, 2018) ....................................35

\* *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
 591 F.3d 250 (4th Cir. 2009) ......................................................10, 24

*NetChoice, LLC v. Bonta*,
 --- F. Supp. 3d ----, 2023 WL 6135551 (N.D. Cal. Sept. 18, 2023)...................31

*NetChoice, LLC v. Griffin*,
 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023)..................................31

\* *PSINet, Inc. v. Chapman*,
 362 F.3d 227 (4th Cir. 2004) ......................................................31, 32

*Reno v. ACLU*,
 521 U.S. 844 (1997)......................................................................26, 31

*Ripplinger v. Collins*,
 868 F.2d 1043 (9th Cir. 1989) ..........................................................30

*Rodriguez v. OfferUp, Inc.*,
 2019 WL 13247290 (M.D. Fla. Aug. 29, 2019)..................................19

*Rubio v. Lopez*,
  445 F. App'x 170 (11th Cir. 2011) ....................................................37

* *Saponaro v. Grindr, LLC*,
  93 F. Supp. 3d 319 (D.N.J. 2015).............................13, 14, 18, 19, 25

* *Smith v. California*,
  361 U.S. 147 (1959).................................................................4, 29, 31

*United States v. Playboy Ent. Grp., Inc.*,
  529 U.S. 803 (2000)....................................................................27

*United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
  858 F.2d 534 (9th Cir. 1988) ...................................................29, 30

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994).......................................................................29

*Vamper v. United Parcel Serv., Inc.*,
  14 F. Supp. 2d 1301 (S.D. Fla. 1998) ...........................................35

*Vesely v. Armslist, LLC*,
  2013 WL 12323443 (N.D. Ill. July 29, 2013), *aff'd*, 762 F.3d 661 (7th Cir. 2014)
  ....................................................................................................35

*Video Software Dealers Ass'n v. Webster*,
  968 F.2d 684 (8th Cir. 1992) .........................................................30

* *Wilding v. DNC Servs. Corp.*,
  941 F.3d 1116 (11th Cir. 2019) ................................................38, 39

*Worldwide, LLC, v. Google, Inc.*,
  188 F. Supp. 3d 1265 (M.D. Fla. 2016)............................................4

* *Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ......................................4, 10, 15, 27, 28

*Ziencik v. Snap, Inc.*,
  2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ..................................35

**State Cases**

* *Clemente v. Horne*,
    707 So. 2d 865 (Fla. 3d DCA 1998) ....................................................37

*Daniel v. Armslist, LLC*,
    926 N.W.2d 710 (Wis. 2019) ............................................................26

*Demelus v. King Motor Co. of Ft. Lauderdale*,
    24 So. 3d 759 (Fla. 4th DCA 2009) ...................................................34

* *Doe II v. MySpace Inc.*,
    175 Cal. App. 4th 561 (2009) ...........................................4, 12, 16, 17

*Does #1-50 v. Salesforce.com, Inc.*,
    2021 WL 6143093 (Cal. Ct. App. Dec. 30, 2021) (unpublished) ....................21

*Dorsey v. Reider*,
    139 So. 3d 860 (Fla. 2014) ............................................................34

*Garrison Ret. Home Corp. v. Hancock*,
    484 So. 2d 1257 (Fla. 4th DCA 1985) ................................................33

* *In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021) ...................................... 12, 16, 17, 18, 19, 21, 27

*K.M. ex rel. D.M. v. Publix Super Mkts., Inc.*,
    895 So. 2d 1114 (Fla. 4th DCA 2005) .............................................32, 34

*Knight v. Merhige*,
    133 So. 3d 1140 (Fla. 4th DCA 2014) .................................................34

* *McCain v. Fla. Power Corp.*,
    593 So. 2d 500 (Fla. 1992) ............................................................32

* *Metro. Life Ins. Co. v. McCarson*,
    467 So. 2d 277 (Fla. 1985) ............................................................36

*Michael & Philip, Inc. v. Sierra*,
    776 So. 2d 294 (Fla. 4th DCA 2000) ..................................................34

* *Simon v. Celebration Co.*,
    883 So. 2d 826 (Fla. 5th DCA 2004) ...............................................38, 39

*V.V. v. Meta Platforms, Inc.*,
2024 WL 678248 (Conn. Super. Ct. Feb. 16, 2024)...........................................23

*Waves of Hialeah, Inc. v. Machado*,
300 So. 3d 739 (Fla. 3d DCA 2020)............................................................33, 34

*Williams v. Davis*,
974 So. 2d 1052 (Fla. 2007) ...............................................................................32

\* *Wozniak v. YouTube, LLC*,
--- Cal. Rptr. 3d. ----, 2024 WL 1151750 (Cal. Ct. App. Mar. 15, 2024)
...................................................................................................19, 21, 22

**Federal Statutes**

47 U.S.C.
§ 230(b)...............................................................................................................28
§ 230(b)(5) ..........................................................................................................27
§ 230(c)(1) ....................................................................................4, 10, 11, 13, 23
§ 230(c)(2)(A).....................................................................................................11
§ 230(d)...............................................................................................................27
§ 230(e)(5)...........................................................................................................28
§ 230(f)(2)...........................................................................................................14

**Other Authorities**

Eric Goldman, *Omegle Denied Section 230 Dismissal*, Tech. & Mktg. L. Blog
(July 20, 2022), https://tinyurl.com/yk6zm6tw ................................................23

Grindr's Terms & Conditions of Service, https://www.grindr.com/terms-of-service/
.........................................................................................................................6, 7

*May*, BLACK'S LAW DICTIONARY (11th ed. 2019)
...................................................................................................................36, 39

**STATEMENT OF JURISDICTION**

Grindr agrees with Appellant Mother Doe that the district court had jurisdiction over Mother Doe's claims under 28 U.S.C. § 1332 and that Mother Doe timely appealed the district court's October 26, 2023, final judgment. Mother Doe cites the wrong statute for this Court's jurisdiction. The proper statute is 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars Mother Doe's claims, which are based on Grindr's publication of an adult user's messages to Mother Doe's son on Grindr's social networking platform.

2.      Whether the First Amendment independently bars Mother Doe's claims because Mother Doe fails to allege that Grindr knew of the unlawful nature of the adult user's communications and because the imposition of effective age-verification measures impermissibly burdens adults' access to speech.

3.      Whether under Florida law Grindr owed Mother Doe's son a legal duty to prevent the adult user's criminal conduct and whether Grindr's alleged failure to prevent the user's conduct was sufficiently outrageous to support an IIED claim.

**INTRODUCTION**

Plaintiff Mother Doe seeks to hold Grindr, a social-networking service, responsible for injuries her son suffered after an adult he met on Grindr assaulted him. As Plaintiff has conceded, Grindr forbids minors from using its service, and her son John Doe had to lie about his age to access Grindr's app. Plaintiff does not allege Grindr knew John Doe was underage, or that Edward Pritt, the adult who assaulted him, was misusing its service. Plaintiff asserts, however, that Grindr is liable for negligence and intentional infliction of emotional distress because it did not prevent John Doe from accessing its platform and communicating with Pritt.

This theory—that a social-networking service may be liable for injuries inflicted by one user on another merely because the two met using the service—has been rejected by every appellate court to consider it. The district court correctly dismissed Plaintiff's claims, and this Court should affirm for three reasons.

*First*, Section 230 bars Plaintiff's claims. Under Section 230, online services like Grindr cannot be held liable for claims arising from their publication of user content. Although Plaintiff purports to target Grindr's "conduct," her claims turn on Grindr's publication of Pritt's messages to her son. Grindr's alleged failure to verify users' ages, or adequately warn about or represent the risks of harm from communicating with other users, are relevant only insofar as they would have ostensibly stopped Pritt from sending messages that lured John Doe into danger.

Courts consistently reject such claims.  Unable to escape these authorities, Plaintiff fabricates legal principles.[1]  She asserts, for example, that Section 230(c)(1) "only provides immunity for actions 'voluntarily taken in good faith,'" Mother Doe's Opening Brief ("Br.") 11 (citations omitted), but that is wrong.  She also argues the Supreme Court cautioned courts against reading the statute's protections too broadly, but the Court has never spoken on Section 230, much less reversed uniform authority holding that Section 230 provides broad immunity.  *Id.* at 12.

*Second*, the First Amendment bars Plaintiff's claims.  Under *Smith v. California*, 361 U.S. 147 (1959), Grindr cannot be liable for transmitting Pritt's communications unless it knew the character of the communications that made them unlawful.  Plaintiff does not allege Grindr had such knowledge.  The First

---

[1] Plaintiff also continues to misquote and misrepresent authority.  *See* DE 49 at 1 n.1; *see, e.g.*, Br. 12 (misquoting *e-ventures Worldwide, LLC, v. Google, Inc.*, 188 F. Supp. 3d 1265 (M.D. Fla. 2016)); *id.* at 13-14 (misquoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008)); *id.* at 15 (misquoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997), and *Dimeo v. Max*, 433 F. Supp. 2d 523 (E.D. Pa. 2006), *aff'd*, 248 F. App'x 280 (3rd Cir. 2007)); *id.* at 17 (misquoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003), *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019), and *Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003)); *id.* at 23 (misquoting *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561 (2009)); *id.* at 27 (misquoting *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022)); *id.* at 30 (misquoting *M.A. ex rel. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011)).

Amendment also bars Plaintiff's attempt to require Grindr to implement age-verification methods, as such mandates impermissibly chill protected speech.

**Third**, Plaintiff's claims independently fail under Florida law. Plaintiff fails to state a negligence claim because Grindr did not owe a legal duty to protect John Doe from Pritt's misconduct. Plaintiff also fails to state an IIED claim because Grindr's publishing activities did not rise to the level of "outrageous" under Florida law. Nor can Plaintiff's "misrepresentation" allegations support her claims.

No minor should be subjected to illicit sexual contact, but Pritt, not Grindr, is liable for John Doe's injuries. The Court should affirm the district court's decision to dismiss Plaintiff's claims against Grindr with prejudice.

## STATEMENT OF THE CASE

### I. Factual Background

Plaintiff misrepresents the factual record and makes baseless accusations not alleged in the operative complaint. *See, e.g.*, Br. 2 (asserting "Grindr falsely claims that minors cannot register on its app," without identifying the alleged statement and citing only an allegation about anonymity); *id.* at 30 (claiming that Grindr "hold[s]" itself "out to" "investors as an application for sex for profitability"). The allegations the district court considered are set forth in the Second Amended Complaint. Grindr summarizes those allegations and related information subject to judicial notice here.

Grindr operates a social networking service that allows adults to connect and communicate with one another.  DE 28 ¶¶ 11, 34.  To create an account, a user must provide their date of birth and accept Grindr's Terms & Conditions of Service, https://www.grindr.com/terms-of-service/ ("Terms").[2]  *See id.* ¶ 12.  Only users who represent that they are above the age of majority may access the app:

> 1. <u>NO USE BY UNDERAGE PERSONS</u>. The Grindr Services are intended ONLY for legal adults.  NO PERSONS UNDER THE AGE OF EIGHTEEN (18) YEARS … MAY ATTEMPT, DIRECTLY OR INDIRECTLY, TO VIEW, DOWNLOAD, POSSESS, OR OTHERWISE USE THE GRINDR SERVICES.
>
> 2. <u>YOU MUST BE A LEGAL ADULT.</u>  BY ACCEPTING THIS AGREEMENT, CREATING A USER ACCOUNT (AS DEFINED BELOW), AND ENTERING A DATE OF BIRTH FOR AGE VERIFICATION PURPOSES, YOU AFFIRMATIVELY REPRESENT AND WARRANT THAT … YOU ARE CURRENTLY EIGHTEEN (18) YEARS OF AGE OR OVER ….

Terms §§ 1.1-1.2; *see also* DE 28 ¶ 34 ("Grindr doesn't allow users younger than eighteen (18) years old on the website and application").[3]

---

[2] The Court may consider Grindr's Terms because Plaintiff quotes them in her Second Amended Complaint, their contents are not in dispute, and they are central to Plaintiff's claim that Grindr misrepresented minors' ability to access its app.  *See* DE 28 ¶¶ 13-15, 35, 42; *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[3] The Second Amended Complaint quoted a prior version of the Terms, available at: https://web.archive.org/web/20210826202836/https://www.grindr.com/terms-of-service/, which stated in Section 1.1 that "NO PERSONS UNDER THE AGE OF EIGHTEEN (18) YEARS … MAY DIRECTLY OR INDIRECTLY VIEW,

Grindr informs users that it does not verify the information provided by users or conduct background screening of users:

> YOU ARE SOLELY RESPONSIBLE FOR YOUR USE OF THE GRINDR SERVICES AND YOUR INTERACTIONS WITH OTHER USERS (WHETHER ON OR OFF THE GRINDR SERVICES). GRINDR MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE CONDUCT, IDENTITY, INTENTIONS, LEGITIMACY, OR VERACITY OF ANY USERS. … GRINDR DOES NOT CURRENTLY CONDUCT CRIMINAL OR OTHER BACKGROUND SCREENINGS OF OUR USERS. … GRINDR DOES NOT INQUIRE INTO THE BACKGROUNDS OF OUR USERS OR ATTEMPT TO VERIFY THE INFORMATION PROVIDED BY OUR USERS IN CONNECTION WITH ACCOUNT CREATION, INCLUDING THE ACCURACY OF THE DATE OF BIRTH REPORTED….

Terms § 2. The Second Amended Complaint alleges Grindr has around "13 million active users." DE 28 ¶ 26.

Plaintiff alleges that her son, John Doe, created a Grindr account as a minor, DE 28 ¶ 27, a process that would have required him to misrepresent his age. *See id.* ¶¶ 12, 14, 34. John Doe then communicated with an adult user, Edward Pritt, and the two arranged to meet in person. *Id.* ¶ 28. On or about October 2, 2022, Pritt and Doe were found "engaging in sex acts" in a vehicle. *Id.* ¶ 30. Pritt was arrested. *Id.*

---

POSSESS OR OTHERWISE USE THE GRINDR SERVICES." Irrespective of which version applies, Doe's claims were properly dismissed for the same reasons.

Plaintiff asserts two causes of action against Grindr—negligence and intentional infliction of emotional distress (IIED). *Id.* ¶¶ 32-47. Plaintiff claims Grindr is responsible for Pritt's actions because Grindr should have prevented John Doe from communicating with him by implementing stricter age-verification procedures, *id.* ¶¶ 12, 34, and by warning users of the risks communications from adult users pose to minors, *id.* ¶¶ 19, 36—even though Grindr is an adults-only platform and states in its Terms that it does not perform background checks or verify information users provide, Terms §§ 1.1-1.2, 2. Plaintiff also claims Grindr negligently states that no minor "MAY" use Grindr because "it is certainly possible" for minors to use Grindr. *Id.* ¶¶ 13-14, 35, 42.

## II. Procedural History

On April 26, 2023, Plaintiff filed a First Amended Complaint, which Grindr moved to dismiss for failure to state a claim. DE 22. Plaintiff obtained leave to file the Second Amended Complaint. DE 25, 27, 28. Grindr moved to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) because (1) Section 230 bars Plaintiff's claims; (2) the First Amendment bars Plaintiff's claims; and (3) Plaintiff has failed to state a claim under Florida law. *See* DE 35, 44. On October 26, 2023, the district court dismissed Plaintiff's claims with prejudice. DE 50.

### III.  Standard of Review

This Court reviews a Rule 12(b)(6) dismissal *de novo*.  *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023).  The Court may affirm the district court's dismissal on any basis in the record, "regardless of whether the District Court actually relied upon that basis in dismissing the plaintiff's claim." *Henley v. Payne*, 945 F.3d 1320, 1333 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

The Court should affirm the district court's decision for three reasons.

1.     Section 230 bars all of Plaintiff's claims.  These claims seek to hold Grindr liable for publishing third-party content that allegedly gave rise to John Doe's injuries.  The district court correctly held that Grindr is an interactive computer service provider, and that Plaintiff's claims seek to treat Grindr as the publisher of third-party content.  Dismissal is consistent with well-established case law and Congressional policy that Section 230 established to protect free speech online.

2.     The First Amendment forecloses Plaintiff's claims.  To protect intermediaries and prevent collateral censorship, the First Amendment requires a plaintiff to show that the intermediary had actual knowledge of the allegedly harmful speech it published.  Plaintiff makes no such allegation.

3.     Plaintiff also fails to allege necessary elements of her claims.  Plaintiff fails to allege a negligence claim because an online communication service like

Grindr does not have a legal duty to protect users like John Doe from injuries allegedly resulting from interactions with other users encountered through the service. Plaintiff fails to allege a claim for IIED because Grindr's publishing activity was not outrageous under Florida law. And Plaintiff also fails to state a claim for misrepresentation, which she did not allege in her operative Complaint and which would fail because Plaintiff alleges no actionable misrepresentation, no knowledge of falsity or intent to induce reliance, and no actual reliance or causal damages under any pleading standard, much less Federal Rule of Civil Procedure 9(b).

## ARGUMENT

**I.      The District Court Correctly Held That Section 230 Bars Doe's Claims.**

Enacted to safeguard First Amendment protections online and "avoid the obvious chilling effect that would result from the specter of tort liability," Section 230(c)(1) protects online services from claims that seek to hold them liable for publishing—or failing to screen, block, or monitor—content provided by third parties. *McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 2008)) (cleaned up). The statute establishes an immunity applied at the pleading stage to "protect websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc); *see also Nemet Chevrolet, Ltd. v.*

10

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) ("immunity is an

*immunity from suit* rather than a mere defense to liability") (citation omitted).

Following the "majority of federal circuits," this Court interprets Section 230 "to

establish broad federal immunity to any cause of action that would make service

providers liable for information originating with a third-party user." *Almeida v.*

*Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (citation omitted) (cleaned

up).[4]

Section 230 bars the claims here, all of which seek to hold Grindr liable for

publishing content by and between John Doe and his assailant. This case does not

present "a unique set of facts that has not been litigated on a federal level." Br. 19-

20 & n.6. Not only have plaintiffs brought similar claims, every appellate court to

confront one has rejected them. *See*, *e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 416,

---

[4] Plaintiff asserts Section 230(c)(1) "only provides immunity for actions 'voluntarily taken in good faith.'" Br. 11-12. "[N]othing in § 230(c)(1) turns on the alleged motives underlying the editorial decisions" at issue. *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020). The "good faith" requirement appears in a separate provision concerning acts to "restrict access to" objectionable content. 47 U.S.C. § 230(c)(2)(A). "That § 230(c)(2) expressly provides for a good faith element omitted from § 230(c)(1) indicates that Congress intended not to import a subjective intent/good faith limitation into § 230(c)(1)." *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014). This case only concerns Section 230(c)(1), *see* DE 50 at 2-3, which "by itself, shields from liability all publication decisions … with respect to content generated entirely by third parties," whatever the reason. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009).

419-420 (5th Cir. 2008); *Doe ex rel. Roe v. Snap, Inc.*, 2023 WL 4174061, \*1 (5th Cir. June 26, 2023); *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2560 (2023); *In re Facebook, Inc.*, 625 S.W.3d 80, 93-94 (Tex. 2021); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 568-69, 572-73 (2009).[5] These cases dismissed claims (like those here) that an online service allegedly failed to adequately verify users' age and identity, *e.g.*, *MySpace*, 528 F.3d at 419-20; *In re Facebook*, 625 S.W.3d at 84-85; *Jane Doe No. 1*, 817 F.3d at 16; *Doe II*, 175 Cal. App. 4th at 565, or "fail[ed] to warn" users about the alleged dangers that can arise from communicating with others, *e.g.*, *In re Facebook*, 625 S.W.3d. at 85, 93.

In fact, Plaintiff is not even the first to raise such allegations *against Grindr*. Another federal court recently dismissed materially identical claims by a minor who misrepresented his age to access Grindr and met his assailants there. *See Doe v. Grindr Inc.*, --- F. Supp. 3d ----, 2023 WL 9066310, at \*3-6 (C.D. Cal. Dec. 28, 2023) (negligence, negligent misrepresentation, and related tort claims arising from allegedly deficient "age verification and user matching functions" and alleged "failure to warn"). Two other federal courts—in addition to the district court here—

---

[5] Trial courts hold the same, including within this circuit. *See*, *e.g.*, *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at \*5-6 (M.D. Fla. Jan. 10, 2022); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249, 1252 (S.D. Fla. 2020).

have also rejected claims seeking to hold Grindr liable for injuries allegedly resulting from the exchange of content by users. *See Herrick v. Grindr, LLC*, 765 F. App'x 586, 590-91 (2d Cir. 2019) (dismissing negligence and "failure to warn" claims based on alleged failure to screen and block fake accounts); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (dismissing tort claims based on alleged failure to prevent assault of minor who met adult on service).

Plaintiff's claims are no different. They fall squarely within the ambit of Section 230's protections against intermediary liability for online services.

## A. The Elements of Section 230 Immunity Are Established.

The parties agree Section 230 bars state claims where (1) the defendant is an "interactive computer service" provider and (2) the claim treats the defendant "as the publisher or speaker of [] information" (3) provided by "another" third-party "content provider." *McCall*, 2023 WL 3946827, at *1-3 (applying 47 U.S.C. § 230(c)(1)); Br. 10-11. These elements must be construed "broad[ly]" in favor of immunity, *Almeida*, 456 F.3d at 1321, to effectuate Congress's "policy choice not … to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (citation omitted); *accord Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (same); *MySpace*, 528 F.3d at 418 (same); *Jones v. Dirty World Ent. Recordings*

*LLC*, 755 F.3d 398, 408 (6th Cir. 2014) (same). "[C]lose cases" thus "must be resolved in favor of immunity." *Roommates.com*, 521 F.3d at 1174. But this case is not close, and the district court correctly held the test satisfied.

### 1. Grindr Is an Interactive Computer Service Provider.

First, no one disputes Grindr offers an interactive computer service under 47 U.S.C. § 230(f)(2). *See* Br. 10 & n.3. Numerous courts have found Grindr's app falls within this definition. *See Herrick v. Grindr LLC*, 306 F. Supp. 3d 579, 588-89 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019); *Saponaro*, 93 F. Supp. 3d at 323; *Grindr*, 2023 WL 9066310, at *3.

### 2. Plaintiff's Claims Treat Grindr as a Publisher.

A claim implicates a defendant's role as a publisher if it involves the defendant's conduct "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1102 (9th Cir. 2009). "[A]ny activity," in other words, "that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71. "[W]hat matters" is the nature of "the duty that the plaintiff alleges the defendant violated[.]" *Barnes*, 570 F.3d at 1102; *accord FTC v. LeadClick Media, LLC*, 838 F.3d 158, 175 (2d Cir. 2016) (quoting same). If the duty is one that involves the exercise of editorial functions such as "deciding whether to publish, withdraw,

postpone or alter content," the plaintiff's claim seeks to treat the defendant as a publisher and is barred by Section 230. *Barnes*, 570 F.3d at 1102 (quoting *Zeran*, 129 F.3d at 330).

Plaintiff's claims—which seek to hold Grindr liable for failing to prevent John Doe from communicating with Pritt, *see*, *e.g.*, DE 28 ¶¶ 2-3, 12-15, 19-26, 33-38, 42, 46-47; Br. 7, 15—are inextricably tied to Grindr's role as a publisher of user content. The Second Circuit so held to dismiss similar claims in *Herrick*. There, the plaintiff alleged he was "the victim of a campaign of harassment" by someone who created an unverified Grindr profile and sent messages impersonating him. 765 F. App'x at 588. Like Plaintiff, Herrick asserted claims for negligence and failure to warn of or prevent his injuries. *Id.* Like Plaintiff, Herrick purported to base his claims on "Grindr's design and operation of the app"—including its failure to screen and remove unverified profiles—"rather than on its role as a publisher of third-party content." *Id.* at 590. But the Second Circuit rejected Herrick's attempt to plead around Section 230 and held these allegations were "only relevant to Herrick's injury to the extent that [they] would make it more difficult for [users] to post impersonating profiles or make it easier for Grindr to remove them." *Id.* (citation omitted). Claims targeting Grindr's alleged failure to verify user identities before allowing an individual to publish a profile and post content treated Grindr as a publisher because they "reflect[ed] 'choices about what content can appear on the

website.'" *Id.* at 590-91 (quoting *Jane Doe No. 1*, 817 F.3d at 21). Here, too, Plaintiff's claims treat Grindr as a publisher because they seek to force Grindr to implement measures that would have prevented Pritt from communicating with her son. *See*, *e.g.*, DE 28 ¶¶ 2-3, 12-15, 19-26, 33-38, 42, 46-47.

The Texas Supreme Court dismissed similar claims in *In re Facebook*. The plaintiffs there claimed Facebook should have "verif[ied] the identity and/or age of users," imposed "restrictions on eligibility for accounts," and "warned" of sex trafficking on its platforms. 625 S.W.3d at 85, 93-94. The court found these claims treated Facebook as a publisher because, whether "couched as failure to warn, negligence, or some other tort of omission," imposing liability would impermissibly "second-guess[] … Facebook's 'decisions relating to the monitoring, screening, and deletion of third party content.'" *Id.* at 93 (citation omitted) (cleaned up).

The Fifth Circuit reached the same conclusion in an even more analogous case. In *MySpace*, a minor and her parents alleged that a social networking website failed to implement adequate safety features, including age-verification software, to prevent the minor from accessing the site and communicating with her eventual assailant. 528 F.3d at 416, 419-22. Quoting the district court, the court agreed that "[i]t is quite obvious the underlying basis of Plaintiffs' claims is that, through postings on MySpace," the adult and minor "met and exchanged personal information which eventually led to an in-person meeting and the sexual assault."

*Id.* at 419.  Thus, the court concluded, "[n]o matter how artfully Plaintiffs seek to plead their claims," they were "directed toward MySpace in its publishing, editorial, and/or screening capacities."  *Id.* at 420.

That is exactly what Plaintiff attempts.  Just like the *Herrick*, *In re Facebook*, and *MySpace* plaintiffs, Plaintiff argues her claims are not based on "monitoring" or "altering" any "third-party content," but instead on providing "access" and "failure to warn" or accurately "represent[]" risks.  *See* Br. 14-16.  But this distinction is illusory.  Although Plaintiff contends her claims "are unrelated to any interactions between Pritt and Doe" on Grindr, Br. 23, the inescapable genesis of the injury is user-generated content Grindr published—messages between John Doe and Pritt—that Plaintiff claims Grindr should have prevented.  *MySpace*, 528 F.3d at 419-20.  As the district court explained, "communications on the Grindr platform" provide the "foundation of Plaintiff's claim," and her attempt to recast Grindr's liability in terms of "basic safety measures" is "disingenuous" "artful pleading."  DE 50 at 4 (citations omitted).  A California federal court held the same, concluding Section 230 applied because the "root of Doe's claims" also concerned Grindr's role "allowing Doe and the adult men to exchange direct messages and personal information, leading to the in-person meetings and sexual assaults."  *Grindr*, 2023 WL 9066310, at *3; *see also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (Section 230 barred mother's claim that website was

responsible for connecting her son with a user who sold him lethal heroin).  These courts followed *Herrick*'s reasoning that "the existence *vel non* of safety features" on Grindr "is only relevant" "to the extent that such features would make it more difficult" to send and receive the offending content.  306 F. Supp. 3d at 591.  Even where "pleaded to avoid" Section 230, theories like Plaintiff's "implicitly require recourse to … content posted by a third party to establish liability," *id.* at 590 (citation omitted) (cleaned up), and thus target Grindr "in its publishing, editorial, and/or screening capacities."  *MySpace*, 528 F.3d at 420 (citation omitted); *see also In re Facebook*, 625 S.W.3d at 93-94 (same).

As the district court also determined, Plaintiff cannot overcome Section 230 by reframing her claims as seeking to require Grindr to "warn" about the risks of such content or not "misrepresent" minors' access to it.  *Cf.* DE 28 ¶¶ 2, 15, 19; Br. at 6, 8-10, 11, 16, 18, 20-21, 22-24, 28-29.  These theories are "inextricably linked to Grindr's alleged failure to edit, monitor, or remove" particular content from particular users.  *Herrick*, 765 F. App'x at 591; *see also Saponaro*, 93 F. Supp. 3d at 323-24 (Section 230 barred similar negligence theory against Grindr).  Requiring an online service to post "a warning" or make some representation "about third-party content is a form of editing" that implicates Section 230's protections.  *Herrick*, 306 F. Supp. 3d at 592 & 592 n.8; *see also*, *e.g.*, *Grindr*, 2023 WL 9066310, at *5 (barring materially identical "warning" and "negligent misrepresentation" claims).

As in *Herrick*, the proposed warning here would concern "user-generated content" and thus commandeer "Grindr's publishing functions" by requiring Grindr to "publish a warning about the potential for misuse of content posted to its site." 306 F. Supp 3d at 592 & 592 n.8; *see also In re Facebook*, 625 S.W.3d at 93-94 (same). That could be content posted by minors like John Doe misrepresenting "that he was over [18] years of age." *Saponaro*, 93 F. Supp. 3d at 323. Or it could be content posted by adults like Pritt soliciting unlawful acts. *See MySpace*, 528 F.3d at 419-20. Either way, Section 230 bars claims "seek[ing] to hold [Grindr] responsible for failing to monitor its website" in a way that prevents minors from "us[ing] its service." *Saponaro*, 93 F. Supp. 3d at 323-24; *see also*, *e.g.*, *Rodriguez v. OfferUp, Inc.*, 2019 WL 13247290, at *3 (M.D. Fla. Aug. 29, 2019) (rejecting repackaged failure-to-warn claim as "artful pleading tactic"). Any other rule "would allow essentially every state cause of action otherwise immunized by [S]ection 230 to be pleaded as a failure to warn of such information published by a defendant." *Wozniak v. YouTube, LLC*, --- Cal. Rptr. 3d. ----, 2024 WL 1151750, at *12 (Cal. Ct. App. Mar. 15, 2024) (affirming dismissal).

Plaintiff relies heavily on two Ninth Circuit decisions—*Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) and *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021)—but neither applies. *Internet Brands*, which Plaintiff calls "most analogous," Br. 20, involved vastly different facts. That case permitted a failure-to-

warn claim to proceed, but only because the defendant website allegedly had actual knowledge "from an outside source" that the "two individuals" who assaulted the plaintiff had been "criminally charged" for using the website to find victims. 824 F.3d at 848-49. The plaintiff, however, never alleged the website "transmitted any potentially harmful messages" between her and her attackers, or that her attackers even "posted anything to the website" that "lured" her into danger. *Id.* at 851-52. The case concerned a narrow question: "whether it would be inconsistent with [S]ection 230(c)(1) … to require an interactive computer service provider to warn its users about the threat of a *known* sexual predator." *Id.* at 850-51 (emphasis added). Because the defendant's purported duty to warn in these circumstances did "not arise from an alleged failure to adequately regulate access to user content," and would not "affect how [the defendant] publishes or monitors such content," *id.* at 851, 853, the court held Section 230 inapplicable.

Here, by contrast, Plaintiff alleges no facts to suggest Grindr had actual knowledge of Pritt, John Doe, or their conduct. *Cf.* DE 28 ¶ 36 (asserting in conclusory manner that Grindr "had actual or constructive notice" that some "minors had access to the site" and were thus theoretically "vulnerable to sexual abuse"). And unlike in *Internet Brands*, John Doe's alleged injuries result from communications Plaintiff claims Grindr should have screened or prevented. *See also*, *e.g.*, *Herrick*, 765 F. App'x at 591 (distinguishing *Internet Brands* on this

basis); *In re Facebook*, 625 S.W.3d at 95 (same); *Wozniak*, 2024 WL 1151750, at *11 (same); *Does #1-50 v. Salesforce.com, Inc.*, 2021 WL 6143093, at *7 (Cal. Ct. App. Dec. 30, 2021) (unpublished) (same); *L.W. ex rel. Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1100 (S.D. Cal. 2023) (same); *Anderson v. TikTok, Inc.*, 637 F. Supp. 3d 276, 281 (E.D. Pa. 2022) (same).[6]

   *Lemmon* is also irrelevant.  That case involved a "speed filter" that allegedly encouraged users to drive fast, creating an "independent[]" danger *even if* the filter was not used to communicate content.  995 F.3d at 1093-94; *see also Grindr*, 2023 WL 9066310, at *4 ("Whether the user posted content for Snapchat to publish was immaterial.").  Here, however, Plaintiff claims John Doe was injured because Grindr allowed him to communicate with Pritt, not because of any static design divorced from publication.  *See* DE 28 ¶¶ 27-29.  *Lemmon* has no application where, as here, "the harm" is "related to the posting of third-party content."  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 929-30 (N.D. Cal. 2021), *aff'd in part & rev'd in part on other grounds*, 2023 WL 3220912 (9th Cir. May 3, 2023) (rejecting application of *Lemmon*); *see also, e.g.*, *Diep v. Apple, Inc.*, 2024 WL 1299995, at *2 (9th Cir. Mar. 27, 2024); *Doe ex rel. Roe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex.

---

[6] Again misrepresenting authority, Plaintiff asserts *Anderson* held "Section 230 did not apply," Br. 15, but in fact, the court found Section 230 barred plaintiff's design defect and failure to warn claims.  *See* 637 F. Supp. 3d at 280-81.

July 7, 2022), *aff'd*, 2023 WL 4174061 (5th Cir. June 26, 2023); *Wozniak*, 2024 WL 1151750, at *11; *Grindr*, 2023 WL 9066310, at *4; *L.W.*, 675 F. Supp. 3d at 1097; *Bride v. Snap Inc.*, 2023 WL 2016927, at *5-6 (C.D. Cal. Jan. 10, 2023); *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *2 (C.D. Cal. Nov. 4, 2022); *Anderson*, 637 F. Supp. 3d at 281.

Against this overwhelming authority, Plaintiff cites two district court decisions. Neither changes the analysis. First, far from greenlighting "weak age verification" claims like Plaintiff's for "allow[ing] Doe to access the App," Br. 7-8, 19, the court in *In re Social Media* confirmed Section 230 bars claims that an online service "should have used age-verification to … limit platform access to children." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, --- F. Supp. 3d ----, 2023 WL 7524912, at *12 (N.D. Cal. Nov. 14, 2023) (favorably citing *MySpace*, 528 F.3d at 422, as "consistent"). Unlike the claims that survived in *In re Social Media*, which were premised on allegedly content-independent defects that made platforms "addictive," *id.* at *3, Plaintiff's claims about "weak age verification," DE 50 at 5-6, are "inextricably linked," *Herrick*, 765 F. App'x at 591, to the publication of third-party content: messages Doe exchanged with Pritt. *See also*, *e.g.*, *Grindr*, 2023 WL 9066310, at *3 (same, despite plaintiff's citation to *In re Social Media* in briefing).

Plaintiff's only other authority—*A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814 (D. Or. 2022)—is an outlier that misreads precedent in its own circuit and conflicts with every other decision, including an opinion from a court in this circuit dismissing near-identical claims against the same defendant. *See M.H.*, 2022 WL 93575, at *1; *see also* Eric Goldman, *Omegle Denied Section 230 Dismissal*, Tech. & Mktg. L. Blog (July 20, 2022), https://tinyurl.com/yk6zm6tw (*A.M.* was "obviously wrong"). The California federal court considering analogous claims against Grindr declined to follow *A.M.*, *see Grindr*, 2023 WL 9066310, at *7 n.4, and even by *A.M.*'s own tortured reasoning, the case has no application to claims like Plaintiff's involving services that do not randomly match users. *See A.M.*, 614 F. Supp. 3d at 820-21. The Court should similarly steer clear of *A.M.*'s errant reasoning. *See also*, *e.g.*, *V.V. v. Meta Platforms, Inc.*, 2024 WL 678248, at *10-11 & n.13 (Conn. Super. Ct. Feb. 16, 2024) (rejecting *A.M.* as inconsistent "with Second Circuit precedent").

### 3. Plaintiff's Claims Are Based on Content Provided by Pritt, Another Information Content Provider.

Section 230 protects services from liability for content provided by another "information content provider," 47 U.S.C. § 230(c)(1), defined as a person or entity "that is responsible, in whole or in part, for the creation or development of information provided," *id.* § 230(f)(3). A service only becomes an "information content provider" if it "materially contributes" to the allegedly unlawful *content* they

publish.  *Roommates.com*, 521 F.3d at 1166-68.  Plaintiff claims Grindr "materially contributed to the illegality of Pritt's conduct" "by designing its platform for an illicit purpose."  Br. 27, 29; *see* DE 28 ¶ 21.  Plaintiff misunderstands the law.[7]

Merely providing "tools" for others to communicate—even in ways that "may be unlawful"—is not enough.  *Roommates.com*, 521 F.3d at 1169.  What matters is whether the defendant is "responsible for what makes the displayed content allegedly unlawful" or tortious.  *Jones*, 755 F.3d at 414-15 (applying *Roommates* test).  Thus in *Jones*, the defendant did not materially contribute to allegedly defamatory statements it collected through a "content submission form," even where the defendant "select[ed] the statements for publication."  *Id.* at 415-17.  Likewise in *McCall*, this Court found no material contribution absent "allegations that suggest Amazon helped develop the allegedly defamatory review."  2023 WL 3946827, at *3 (applying *Roommates* test).  A plaintiff must "plead facts to show" the defendant "create[d]" or "develop[ed]" the harmful content.  *Nemet*, 591 F.3d at 258.

Plaintiff makes no such allegation here.  *Cf.* DE 28.  In fact, she *admits* the Grindr features that supposedly "contributed" to "Pritt's conduct," such as its

---

[7]  Plaintiff's citation to *Lemmon* to support her "material contribution" argument illustrates her misunderstanding.  *See* Br. 27.  Because *Lemmon* held the plaintiff's claim did not depend on third-party content, it did not address material contribution at all.  995 F.3d at 1094.  The court recognized Section 230 bars claims, like Plaintiff's here, that "at bottom, depend[] on a third party's content."  *Id.* at 1094.

"geolocation" matching function, are "content neutral." *See* Br. 28 & n.7. That is dispositive. *See*, *e.g.*, *Force*, 934 F.3d at 66 (no material contribution from "tools such as algorithms that are designed to match [third-party] information with a consumer's interests"); *Dyroff*, 934 F.3d at 1096, 1098-99 (no material contribution from "tools used to facilitate communication" "including recommendations and notifications"); *Jane Doe #1*, 817 F.3d at 20-21 (providing messaging system not material contribution); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1364 (S.D. Fla. 2022) (same); *Bride*, 2023 WL 2016927, at *5 (same). Unlike the website in *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022) (cited Br. 27-28, 29), Grindr's app—which *MG Freesites* expressly distinguished—merely provides "tools" and "algorithms" for users to communicate. *Id.* at 1162-63 (citing *Herrick*, 765 F. App'x at 591). Every court has thus rejected Plaintiff's contention that Grindr's geolocation and messaging tools render it an information content provider. *See also Saponaro*, 93 F. Supp. 3d at 324 (same); *Grindr*, 2023 WL 9066310, at *3 (same). As the district court correctly held, DE 50 at 5-7, Grindr "cannot be liable for providing" such "assistance." *Herrick*, 765 F. App'x at 591.[8]

---

[8] Plaintiff asserts Grindr knew or should have known that *some* minors were on its platform and therefore *could* have been exposed to danger by using its tools. *See* DE 28 ¶ 36. Even if that "conclusory statement[]" were entitled to a presumption of truth, *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), it makes no difference. Section 230 applies "even when" a provider "knows, or should know, that its neutral tools

## B. Applying Section 230 Supports Congressional Policy.

Denied by law, Plaintiff turns to policy, asking this Court to ignore precedent and fabricate an atextual framework for Section 230 analysis. Falsely arguing that applying Section 230 to cases like this one "contradicts" Congressional policy to "protect[] children" online, Br. 12, 25-26, she implores the Court to break new ground. The Court should decline this startling and misguided invitation.

At the outset, Plaintiff's premise is wrong. Although parts of the Communications Decency Act of 1996 *were* intended to protect children, the Supreme Court held those portions unconstitutional in *Reno v. ACLU*, 521 U.S. 844 (1997). Section 230 of the Act survived, as it "had a different objective: To preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." *LeadClick*, 838 F.3d at 173 & n.6 (distinguishing Senator Exon's statement (cited Br. 26) because it described the Communications Decency Act before Section 230 was added). Far from operating to sanitize the internet for minors, Section 230 provides "an immunity provision" to "protect Internet platforms from liability for failing to perfectly screen unlawful content" *even if* that content is harmful. Br. of Sen. Wyden

---

are being used for illegal purposes." *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 721-22 (Wis. 2019) (citing *Carafano*, 339 F.3d at 1121-22, 1125).

and Former Rep. Cox as Amici Curiae at 7-12, *Gonzalez v. Google LLC*, No. 21-1333, 2023 WL 373840, at *10 (U.S. filed Jan. 19, 2023) (authors of Section 230).

Plaintiff's reference to 47 U.S.C. § 230(d) is equally off-base. The requirement that interactive computer services inform parents about the availability of "parental control protections" reflects Congress's intent to *minimize* those services' exposure to liability by proposing a less restrictive alternative to penalizing or prohibiting the dissemination of harmful content. *See*, *e.g.*, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 823-26 (2000) (laws "promoting more open disclosure and the choice of an effective blocking system" constitute less restrictive alternatives that "would provide parents the information needed to engage in active supervision" without abridging First Amendment rights). The paragraph reinforces the "policy choice" Congress made to reject the "separate route of imposing tort liability" that Plaintiff prefers, electing instead to prioritize free expression and protect the "companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran*, 129 F.3d at 330-31 (citing 47 U.S.C. § 230(b)(5)).

The idea that courts have extended Section 230 beyond Congressional intent has no basis in reality. *Cf.* Br. 11-12, 23. "Congress, with knowledge of the prevailing judicial understanding of [S]ection 230, has twice expanded its scope," in 2002 and again in 2010. *In re Facebook*, 625 S.W.3d at 92. The one time Congress limited Section 230 was to carve out a narrow claim based on criminal misconduct

Plaintiff does not allege. *See* 47 U.S.C. § 230(e)(5); *see also Reddit*, 51 F.4th at 1146. Congress thus "can be presumed to have had knowledge of the interpretation given" to Section 230 that bars Plaintiff's state tort claims here, *Lorillard v. Pons*, 434 U.S. 575, 581 (1978), indicating no reservations with the prevailing approach established in *Zeran* and adopted by this Court. Justice Thomas's solo opinion in *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13 (2020) (Mem.) (Thomas, J., statement)—which Plaintiff falsely misrepresents as an opinion of the Court, *see* Br. 11-12, 23—only underscores that the "prevail[ing]" interpretation of Section 230 bars Plaintiff's claims. 141 S. Ct. at 15-17 (Thomas, J., statement) (citing *Herrick*, 765 F. App'x at 591); *see also Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140 (N.D. Cal. 2023) (noting Justice Thomas's statement "confirm[s] that the current state of law confers … sweeping immunity") (citation omitted).

*     *     *

Congress enacted Section 230 to promote free expression by bolstering First Amendment protections against intermediary tort liability online. *See McCall*, 2023 WL 3946827, at *2 (citing 47 U.S.C. § 230(b)). This is exactly the sort of case to which Section 230 applies, and the decision below should be affirmed.

## II.    The First Amendment Bars Plaintiff's Claims

The First Amendment prohibits holding a forum for speech liable for the content it publishes without proof that the forum at least had "knowledge … of the

contents" of the speech in question. *Smith*, 361 U.S. at 149. Because Mother Doe's claims seek to impose liability based on what Grindr "should have known" about the speech it published, or the "possibility" of harmful content, DE 28 ¶¶ 17, 34, 42, they run afoul of this rule. This provides an independent basis to affirm.

In *Smith*, the Supreme Court held invalid a law making booksellers strictly liable for selling "obscene" books because it would have resulted in self-censorship. 361 U.S. at 153-54. The problem was "[t]he bookseller's limitation in the amount of reading material with which he could familiarize himself." *Id*. If the bookseller could be liable merely for hosting offensive speech, the Court reasoned, the risk of liability "would tend to restrict the public's access to forms of the printed word" and "have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Id.* at 151, 153-54; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73-74, 78 (1994) (*Smith* required construing statute to punish only knowing distribution of child sexual abuse material).

Under *Smith*, a "distributor" may "not be punished if he did not have some 'knowledge of the contents' of the allegedly" unlawful material. *United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 858 F.2d 534, 539 (9th Cir. 1988) (citation omitted); *see also Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611 (6th Cir. 2005) (under *Smith*, "any" law that "chills the exercise of

First Amendment rights must contain a knowledge element") (quoting *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992)). Thus, in *Lewis v. Time Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983), the plaintiff failed to state a claim against distributors of Time Magazine because "[n]o specific facts" were "alleged to show that the distributor defendants … had knowledge of the defamatory nature" of the speech published. *Id.* at 464-65. "[T]here can be no liability" in "any lawsuit" against a "distributor" of third-party speech consistent with "[t]he high standards required by the First Amendment," the court found, "absent scienter" and "specific factual allegations concerning actual knowledge." *Id.* at 463, 465.

The First Amendment bars Plaintiff's claims. Plaintiff does not allege Grindr knew the contents of John Doe's communications with Pritt, nor that Grindr knew Pritt was using its app to communicate with a minor. Rather, Plaintiff claims Grindr knew *some* users had previously used the service to arrange *other* illegal activities. *See* DE 28 ¶ 19. In such circumstances, permitting Plaintiff to impose "liability on a publisher" like Grindr "would have an undoubted 'chilling' effect on speech." *U.S. Dist. Ct.*, 858 F.2d at 539 (citation omitted); *see also Ripplinger v. Collins*, 868 F.2d 1043, 1056 (9th Cir. 1989) (provision permitting liability against distributors who "should know" speech contains obscenity "unduly chills" speech).

Plaintiff argues her claims "will not have a chilling effect" because they seek to punish Grindr "solely" for failing to act in its "role as gatekeeper." Br. 25. That, of course, *is* the evil of intermediary liability and the reason the First Amendment bars her claims: they promote censorship by threatening an intermediary for speech with a "heckler's veto." *Reno*, 521 U.S. at 880. The danger posed by intermediary liability is that it silences all speakers. "License printers," for example, "and it matters little whether authors are still free to write. Restrict the sale of books, and it matters little who prints them." *McConnell v. FEC*, 540 U.S. 93, 251 (2003) (Scalia, J., concurring in part and dissenting in part). It is precisely because exposing intermediaries to expansive liability for others' expression "affects" the rights of "the whole public" that the First Amendment imposes a scienter requirement on civil liability. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964) (quoting *Smith*, 361 U.S. at 154); *see also Counterman v. Colorado*, 600 U.S. 66, 77 (2023) (reaffirming heightened scienter requirements for speech liability generally).

The threatened chilling effect is amplified here given the duties Plaintiff seeks to impose on Grindr. Age and identity verification mandates violate the First Amendment by deterring adults from accessing and engaging in protected speech. *See*, *e.g.*, *ACLU v. Mukasey*, 534 F.3d 181, 196-97 (3d Cir. 2008); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 236-37 (4th Cir. 2004); *NetChoice, LLC v. Bonta*, --- F. Supp. 3d ----, 2023 WL 6135551, at *12 (N.D. Cal. Sept. 18, 2023); *NetChoice, LLC*

*v. Griffin*, 2023 WL 5660155, at \*17 (W.D. Ark. Aug. 31, 2023).  Because Grindr serves LGBTQ adults who, "without the assurance of anonymity," may face a "stigma" for using the app, the deterrent effect and breadth of collateral censorship—above and beyond the chilling effect of potential civil liability unbound by scienter generally—is especially grave.  *PSINet*, 362 F.3d at 236-37.

## III.    Plaintiff Fails to Allege Necessary Elements of Her Claims.

The Court may also affirm because Plaintiff fails to state any claim.

### A.    Plaintiff's Negligence Claim Fails Because Grindr Did Not Owe John Doe a Legal Duty.

A claim for negligence requires the plaintiff to allege the defendant owed the plaintiff a recognized legal duty of care.  *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007).  Whether the defendant owed such a duty is a question of law for the Court.  *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  Plaintiff does not state a negligence claim because Grindr did not owe John Doe a legal duty to prevent or warn of Pritt's criminal conduct.

Under Florida law, the "general rule is that a party has no legal duty to prevent the misconduct of third persons."  *Lee v. Clorox Int'l Co.*, 466 F. App'x 826, 827 (11th Cir. 2012) (citation omitted).  Accordingly, "Florida courts have long been loathe [*sic*] to impose liability based on a defendant's failure to control the conduct of a third party."  *Id.* (quoting *K.M. ex rel. D.M. v. Publix Super Mkts., Inc.*, 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005)).  A defendant may have a duty to prevent third-

party misconduct if there is a "special relationship" (1) between the defendant and the third party, such that the defendant has a duty and the right and ability to control the third party's conduct; or (2) between the defendant and the plaintiff. *Garrison Ret. Home Corp. v. Hancock*, 484 So. 2d 1257, 1261 (Fla. 4th DCA 1985); *see also Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1354 (S.D. Fla. 2003) ("only a few such 'special relationships' exist") (citation omitted). A duty may also arise if the defendant controls the instrumentality of the harm, the premises upon which the tort is committed, or the person who committed the tort. *Waves of Hialeah, Inc. v. Machado*, 300 So. 3d 739, 743 (Fla. 3d DCA 2020).

Plaintiff's claim seeks to impose liability on Grindr for not preventing Pritt—a third party—from abusing John Doe. DE 28 ¶¶ 27-31, 33-40. Plaintiff does not allege a special relationship between Grindr and John Doe, nor do her allegations satisfy any of the exceptions to the requirement of a special relationship.

***First***, Plaintiff fails to allege the "special relationship" necessary to show Grindr had a duty to prevent Pritt from assaulting John Doe. She does not allege Grindr had the right or ability to control Pritt's conduct, and John Doe's mere use of Grindr's platform could not give rise to a "special relationship." *See*, *e.g.*, *Herrick*, 306 F. Supp. 3d at 598-99 (under New York law, Grindr did not have special relationship with its users); *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *13-14 (N.D. Cal. Nov. 26, 2017) (under California law, "a website has

no 'special relationship' with its users"), *aff'd*, 934 F.3d 1093 (9th Cir. 2019). Florida law imposes equally stringent restrictions on the bounds of special relationships. *See*, *e.g.*, *Knight v. Merhige*, 133 So. 3d 1140, 1143, 1145-46 (Fla. 4th DCA 2014) (parents did not have special relationship with adult son that would require preventing him from using allowance to purchase guns and commit murder); *K.M.*, 895 So. 2d at 1118-19 (employer did not owe duty to prevent employee from assaulting child off premises, despite knowledge of employee's conviction for attempted sexual assault of minor).

*Second*, Plaintiff does not and cannot allege that Grindr controlled Pritt, "the person who committed the tort." *See Machado*, 300 So. 3d at 743. The abuse occurred in a vehicle in front of a neighbor's house, not premises controlled by Grindr. DE 28 ¶¶ 29-30. And the alleged instrumentality of the harm was Pritt, who was also beyond Grindr's control. *Id.* ¶¶ 27-30; *see*, *e.g.*, *Dorsey v. Reider*, 139 So. 3d 860, 864–65 (Fla. 2014) (tomahawk third party used to strike plaintiff); *Michael & Philip, Inc. v. Sierra*, 776 So. 2d 294, 298 (Fla. 4th DCA 2000) (vehicle that struck plaintiff); *Knight*, 133 So. 3d at 1146 (gun used to commit murder).

Nor does or could Plaintiff allege Grindr assumed a duty of care through its own conduct. While one who creates or controls a risk may have a duty in negligence, *Demelus v. King Motor Co. of Ft. Lauderdale*, 24 So. 3d 759, 761 (Fla. 4th DCA 2009), a "[d]efendant's creation and operation of a communication

platform … does not by itself create a risk of third-party misuse as a matter of law." *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at \*5 (C.D. Cal. Feb. 3, 2023) (no duty where plaintiffs alleged defendant created app without adequate safety measures). Federal courts consistently dismiss materially identical claims. *See*, *e.g.*, *Beckman v. Match.com, LLC*, 743 F. App'x 142, 143 (9th Cir. 2018) (Nevada law); *Vesely v. Armslist, LLC*, 2013 WL 12323443, at \*2-3 (N.D. Ill. July 29, 2013) (Illinois law), *aff'd*, 762 F.3d 661 (7th Cir. 2014); *M.L. v. Craigslist Inc.*, 2020 WL 6434845, at \*13 (W.D. Wash. Apr. 17, 2020) (Washington law), *report & recommendation adopted by* 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020); *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 736-37 (N.D. Ohio 2007) (Ohio law), *aff'd*, 551 F.3d 412 (6th Cir. 2008). These cases reflect the Ninth Circuit's insight that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101. Plaintiff's claim fails here, as well.

**B.    Plaintiff Cannot State an IIED Claim Because Grindr's Publishing Activity Was Not Outrageous.**

IIED claims are "sparingly recognized by the Florida courts." *Negron v. Celebrity Cruises, Inc.*, 2018 WL 3369671, at \*2 (S.D. Fla. July 10, 2018) (quoting *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998)) (collecting cases). An IIED plaintiff must allege (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct, (3) the conduct caused the emotional

distress, and (4) the distress was severe. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985)). That conduct is "criminal," "intended to inflict emotional distress," or "would entitle the plaintiff to punitive damages for another tort" is not enough. *Martin v. Baer*, 928 F.2d 1067, 1073 (11th Cir. 1991) (quoting *Metro. Life*, 467 So. 2d at 278-79). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McCarson*, 467 So. 2d at 278-79. Whether conduct meets this "extremely high standard" is a question of law for the Court. *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012).

Plaintiff's IIED claim falls far short. Plaintiff bases her claim on what amounts to nonfeasance, not affirmative conduct: Grindr's alleged failure to prevent minors from accessing its service. *See* DE 28 ¶¶ 42, 46. She did not allege Grindr knew of John Doe's account or that he was a minor. Nor did she allege Grindr knew of Pritt or his communications with John Doe. Plaintiff's only allegation of affirmative conduct was that Grindr's website states minors "may" not use Grindr. *Id.* ¶¶ 13, 42, 46. But Plaintiff concedes Grindr prohibits minors from using its app and requires users to provide their birthdate before they can access Grindr's services. *See id.* ¶¶ 12, 14, 34; *see also* Terms §§ 1.1-1.2; *May*, BLACK'S LAW DICTIONARY

(11th ed. 2019) (meaning "To be permitted"). John Doe created a Grindr account by misrepresenting his age. *See* DE 28 ¶ 27. And Pritt misused Grindr's service when luring John Doe to an illicit meeting. Although Plaintiff alleges Grindr "failed to act in good faith" by not doing more to prevent this, *id.* ¶ 20, even "malice" or criminal conduct—which Plaintiff does not allege—is "not enough" to support an IIED claim. *See Clemente v. Horne*, 707 So. 2d 865, 866-67 (Fla. 3d DCA 1998).

Courts routinely dismiss IIED claims based on far more egregious conduct than Plaintiff alleged here. *See Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (hobble-tying plaintiff on hot black asphalt pavement while he screamed in pain, resulting in second-degree burns to face and chest); *Garcia*, 838 F. Supp. 2d at 1339 (allegations that cruise crew members kicked and punched plaintiff, dragged her across the floor while handcuffed, and confined her to her cabin); *Clemente*, 707 So. 2d at 866-67 (knowingly maintaining rental property below flood level such that property was in standing water and infested with termites, causing tenant family's constructive eviction). Plaintiff's claim fails even more readily.

### C. Plaintiff's "Misrepresentation" Theory Fails.

Plaintiff did not allege a claim for misrepresentation. *Cf.* DE 28. But she asserts—without support—that "Grindr falsely claims that minors cannot register on its app or website," Br. 2, and argues her negligence and IIED claims are partly "rooted" in this alleged "misrepresentation," *id.* at 11.

Even if properly presented, the claim—barred by Section 230—would also fail on its merits. "[T]o allege a viable cause of action for negligent misrepresentation a plaintiff must allege in his complaint that: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely and on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004). The material elements of fraud are identical, except a plaintiff must also allege the defendant knowingly misled with intent to induce reliance and injury. *Id.* at 831-32. However her putative misrepresentation claim is classified, Plaintiff alleges none of these facts, which must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard because they "sound in fraud." *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019).

First, there is no misrepresentation. Though none is alleged, it appears Grindr's asserted "misrepresentation" is a statement in its Terms that "NO PERSONS UNDER THE AGE OF EIGHTEEN … MAY DIRECTLY OR INDIRECTLY VIEW, POSSESS, OR OTHERWISE USE THE GRINDR SERVICES." *See* DE 28 ¶ 13. This statement—never fully quoted in Plaintiff's

brief—is a policy statement explaining minors are *not permitted to use* Grindr's services, not that Grindr makes it technologically impossible for minors to access the app. *See May*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To be permitted"). The operative Complaint admits this. *See* DE 28 ¶ 34 ("Grindr doesn't allow users younger than eighteen (18) years old on the website and app[]"). If there were doubt, the very next term requires users to "enter[] a date of birth" and thereby "represent and warrant" that they are adults. *See* Terms § 1.2. Absent any misrepresentation, the claim fails. *See also Simon*, 883 So. 2d at 833 (dismissing where claimed misrepresentation was "too vague" to be actionable).

Second and third, because the alleged "misrepresentation" is in fact an indisputably true (DE 28 ¶ 34) statement of Grindr's policy and not a statement of fact about the state of affairs on Grindr's platform, Grindr could not have "known" it was false or intended John Doe to rely on it. And indeed Plaintiff alleges nothing of the sort, much less with the specificity Rule 9(b) requires.

Fourth, Plaintiff also fails to allege John Doe saw or relied on the statement, or was otherwise harmed by it. *See Wilding*, 941 F.3d at 1128 (affirming dismissal of Florida negligent misrepresentation claim where plaintiff "failed to allege with particularity the manner in which they relied on the defendants' statements").

## CONCLUSION

For these reasons, the Court should affirm the district court's decision.

Dated:  April 8, 2024.

Respectfully submitted,

By: */s/ Ambika Kumar*
Ambika Kumar
Sara A. Fairchild
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone:  (206) 622-3150
Facsimile:  (206) 757-7700
ambikakumar@dwt.com
sarafairchild@dwt.com

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-8618
Facsimile:  (213) 633-6899
adamsieff@dwt.com

Lawrence G. Walters
WALTERS LAW GROUP
195 W. Pine Ave.
Longwood, Florida  32750-4104
Telephone:  (407) 957-9150
Facsimile:  (407) 774-6151
larry@firstamendment.com
paralegal@firstamendment.com

*Attorneys for Appellees Grindr LLC and*
*Grindr Holdings LLC*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this brief contains 9,499 words.

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 MSO in Times New Roman, 14-point font.

DATED: April 8, 2024

      /s/ Ambika Kumar
      Ambika Kumar
      Attorney for Appellees Grindr
      LLC and Grindr Holdings LLC

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on April 8,2024, I caused a true and correct copy of the foregoing **BRIEF OF APPELLEES GRINDR LLC and GRINDR HOLDINGS LLC** to be filed through the Appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the Appellate CM/ECF system.

DATED: April 8, 2024

/s / Ambika Kumar
Ambika Kumar
Attorney for Appellees Grindr LLC
and Grindr Holdings LLC