# NO. 23-13874

In The
# United States Court Of Appeals
# For The Eleventh Circuit

**MOTHER DOE, on behalf of John Doe,**

*Plaintiff – Appellant,*

**v.**

**GRINDR, LLC, GRINDR HOLDINGS LLC, formerly known as
KL Grindr Holdings LLC,**

*Defendants – Appellees,*

**KL GRINDR HOLDINGS, INC.,** *et al.,*

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

_____

## REPLY BRIEF OF APPELLANT
_____

**Krisel McSweeney**
MCSWEENEY LAW FIRM
**5550 Glades Road, Suite 500**
**Boca Raton, Florida 33431**
**(800) 540-0668**

*Counsel for Appellant*

*GibsonMoore Appellate Services, LLC*
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA 23219
(804) 249-7770 ♦ www.gibsonmoore.net

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant Mother Doe on behalf of her minor child John Doe, pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 26.1–1, 26.1–2, and 26.1–3, hereby submit her Certificate of Interested Persons and Corporate Disclosure Statement.

In alphabetical order, following are all trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations and other identifiable legal entities related to a party:

A) Antoon, John - Senior District Judge, Middle District of Florida

B) Davis Wright Tremaine LLP – Law Firm for Appellees

C) Doe, John – Appellant, by and through Mother Doe

D) Doe, Mother – Appellant, on behalf of John Doe

E) Fairchild, Sara – Attorney for Appellees

F) Gold, Loren L. – Attorney for Appellant

G) Grindr, LLC – Appellee

H) Grindr Capital LLC – sole member of Appellee Grindr Holdings LLC

I) Grindr Gap LLC – sole member of Grindr Capital LLC

J) Grindr Group LLC – sole member of Grindr Gap LLC

K) Grindr Holdings LLC – Appellee

L) Grindr Inc. (GRND) – sole member of Grindr Group LLC

M) Hach Rose Schirripa & Cheverie, LLP – Law Firm for Appellant

N) Kumar, Ambika – Attorney for Appellees

O) Loren L. Gold, P.A. – Law Firm for Appellant

P) McSweeney Law Firm – Law firm for Appellant

Q) McSweeney, Krisel – Attorney for Appellant

R) Nappi, Hillary – Attorney for Appellant

S) Sieff, Adam – Attorney for Appellees

T) Walters Law Group – Law Firm for Appellees

U) Walters, Lawrence G. – Attorney for Appellees

2. The name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

Grindr Inc. (GRND)

3. The name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:

None.

/s/ Krisel McSweeney

Krisel McSweeney
*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page:**

CERTIFICATE OF INTERESTED PERSONS AND
   CORPORATE DISCLOSURE STATEMENT ........................................i

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES........................................................................v

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................6

    I.     SECTION 230 IMMUNITY CANNOT ATTACH BECAUSE
          ALL OF THE ELEMENTS REQUIRED TO TRIGGER
          IMMUNITY ARE NOT SATISFIED.....................................6

          a.     Plaintiff's Claims Do Not Treat Grindr as a Publisher or
               Speaker ........................................................................6

          b.     Doe's Claims do not Fault Grindr for Pritt's Content...............13

    II.    SECTION 230 DOES NOT PROVIDE DEFENDANTS
          IMMUNITY PURSUANT TO THE MATERIAL
          CONTRIBUTION EXCEPTION.......................................14

    III.   ALLOWING DOE'S SUIT TO PROCEED DOES NOT
          DAMPEN THE PURPOSE § 230.......................................16

    IV.   DEFENDANTS' CONDUCT IS NOT PROTECTED BY THE
          FIRST AMENDMENT .....................................................17

    V.    DEFENDANTS OWED JOHN DOE A DUTY AFTER
          CREATING A FORESEEABLE ZONE OF RISK............................19

    VI.   KNOWINGLY EXPOSING CHILDREN TO SEXUAL ABUSE
          OR TRAFFICKING IS ODIOUS AND UTTERLY
          INTOLERABLE IN A CIVILIZED COMMUNITY..........................23

CONCLUSION ........................................................................................................25

CERTIFICATE OF COMPLIANCE.........................................................................26

CERTIFICATE OF FILING AND SERVICE..........................................................27

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*A.M. v. Omegle.com, LLC*,
    2023 U.S. Dist. LEXIS 17581,
    614 F. Supp. 3d 814 (D. Or. 2022) ......................................4, 5, 7, 9

*Allied Veterans of the World, Inc. v. Seminole County*,
    2011 U.S. Dist. LEXIS 101003 (M.D. Fla. 2011) ........................17

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006)........................................................1

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................23

*Borrack v. Reed*,
    53 So. 3d 1253 (Fla. 4th DCA 2011) ...........................................19

*Control Grp. Media Co., LLC*,
    2022 U.S. Dist. LEXIS 140211 (S.D. Cal. 2022).........................13

*Daly v. Denny's, Inc.*,
    694 So. 2d 775 (Fla. 4th DCA 1997)............................................21

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005)......................................................3

*Demelus v. King Motor Co. of Ft. Lauderdale*,
    24 So. 3d 759 (Fla. 4th DCA 2009)..............................................20

*Doe II v. MySpace, Inc.*,
    175 Cal.App.4th 561, 96 Cal. Rptr. 3d 148 (Ct. App. 2009)..........3

*Doe v. Grindr Inc.*,
    2023 U.S. Dist. LEXIS 230505, __ F. Supp. 3d __ ................6, 7, 8

*Doe v. Internet Brands, Inc.*,
    824 F.3d 846 (9th Cir. 2016).........................................................11

v

*Doe v. MG Freesites, Ltd.*,
676 F. Supp. 3d 1136 (N.D. Ala. 2022) .......................................................14

*Doe v. MySpace Inc.*,
528 F.3d 413 (5th Cir. 2008)......................................................................1, 3

*Doe v. Snap, Inc.*,
2023 U.S. App. LEXIS 16095 (5th Cir. 2023) .............................................3

*Dorsey v. Reider*,
139 So. 3d 860 (Fla. 2014) .....................................................................20, 21

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938)........................................................................................22

*Fair Hous. Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008)........................................................................4

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)..............................................................................6

*FTC v. LeadClick Media, LLC*,
838 F.3d 158 (2d Cir. 2016)............................................................................4

*Gracey v. Eaker*,
837 So. 2d 348 (Fla. 2002) ...........................................................................21

*Harry v. Marchant*,
291 F.3d 767 (11th Cir. 2002).........................................................................9

*Herrick v. Grindr LLC*,
765 Fed. Appx. 586 (2d Cir. 2019).................................................................7

*Herrick v. Grindr*,
306 F. Supp. 3d 579 (N.Y.S.D. 2018).....................................................11, 12

*Homeaway.com, Inc. v. City of Santa Monica*,
2018 U.S. Dist. LEXIS 40198 (C.D. Cal. 2018) ....................................17-18

*In re Facebook, Inc.*,
625 S.W.3d 80 (Tex. 2021) .......................................................................9, 10

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*,
    No. 4:22-MD-03047-YGR, 2023 WL 7524912
    (N.D. Cal. Nov. 14, 2023), motion to certify appeal denied,
      No. 4:22-MD-03047-YGR, 2024 WL 1205486
    (N.D. Cal. Feb. 2, 2024) ..................................................................... 18-19

*In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*,
    2023 U.S. Dist. LEXIS 203926 (N.D. Ca 2023) ...........................................12

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014)...........................................................................6

*Koves v. City of Orlando*,
    319 Fed. Appx. 783 (11th Cir. 2009) ............................................................3

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021).......................................................7, 8, 14, 16

*M.H. v. Omegle.com, LLC*,
    2022 WL 93575 (M.D. Fla. Jan. 10, 2022)...................................................11

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,
    141 S. Ct. 13 (2020).........................................................................................1

*Martin v. Baer*,
    928 F.2d 1067 (11th Cir. 1991) ...................................................................25

*Martinello v. B & P United States*,
    566 So. 2d 761 (1990) ..................................................................................22

*Ricci v. Teamsters Union Local 456*,
    781 F.3d 25 (2015).......................................................................................16

*Roca Labs, Inc. v. Consumer Op. Corp.*,
    140 F. Supp. 3d 1311 (M.D. Fla. 2015) .......................................................13

*Saponaro v. Grindr, LLC*,
    93 F. Supp. 3d 319 (D.N.J. 2015) ..................................................................8

*Saunders v. Baseball Factory*,
    2023 Fla. App. LEXIS 3281 (Fla. 4th DCA 2023)........................................20

*Seminole County Sch. Bd.*,
636 F. Supp. 2d 1317 (M.D. Fla. 2009).................................................23, 24

*Smith v. Volusia County*,
2011 U.S. Dist. LEXIS 46479 (M.D. Fla. 2011) .........................................23

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2001)......................................................................18

*State v. Higginbotham*,
2024 N.J. LEXIS 378 (2024) .........................................................19

*State v. Hill*,
256 N.J. 266 (2024) ........................................................................19

*Stephens v. Availity*,
2019 U.S. Dist. LEXIS 239572 (M.D. Fla. 2019)........................................21

*T.W. v. Regal Trace, Ltd.*,
908 So. 2d 499 (4th DCA 2005)....................................................21

*United States v. Xcitement Video, Inc.*,
513 U.S. 64 (1994)......................................................................18

*Vining v. Avis Rent-A-Car Systems, Inc.*,
354 So. 2d 54 (Fla. 1977) ............................................................21

*Whitney Info. Network, Inc. v. Verio, Inc.*,
2006 U.S. Dist. LEXIS 1424 (M.D. Fla. Jan. 11, 2006) ..............................11

**Statutes:**

47 U.S.C. § 230 ................................................................................*passim*

47 U.S.C. § 230(c)(1)........................................................................10

47 U.S.C. § 230(e)(3).........................................................................1

**Constitutional Provisions:**

U.S. Const. amend. I .................................................................5, 17, 18, 19

**Rules:**

Fed. R. Civ. P. 12(b)(6) ............................................................................3

**Other Authorities:**

141 Cong. Rec. S1953
   (daily ed. Feb. 1, 1995).....................................................................4

BLACK'S LAW DICTIONARY
   (11th ed. 2019) ...............................................................................8

# **INTRODUCTION**

Contrary to Defendants' argument, this is a case of first impression as the facts of this case have not been previously considered in this jurisdiction. Section 230 of the Communications Decency Act ("CDA" or "§230") does not afford Defendants blanket immunity. "Even [§230] broad statutory immunity does not apply without limitation." *See* 47 U.S.C. § 230(e)(3) (providing that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section"). *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321-1322 (11th Cir. 2006). It behooves courts to look at the individual facts concerning internet cases and how the facts impact the § 230 analysis, as courts are shaping not just the internet world, but the safety of children and future generations. Defendants' reliance on a distinguishable sixteen-year-old case that applied to a social media website that's sole purpose is not for facilitating sex amongst its users is far from acceptable, and should not be the basis for affirmance of the lower court's decision.[1] *Doe v. MySpace Inc.*, 528 F.3d 413, 417 (5th Cir. 2008); *See* SAC p. 4, n. 18 (stating that "when

---

[1] Society deserves better than blind application of immunity under Section 230 that does not analyze the individual facts alleged against defendants who create, develop, and maintain ICSs. *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 18 (2020) (advising, "[b]efore giving companies immunity from civil claims for 'knowingly host[ing] illegal child pornography,' […] we should be certain that is what the law demands").

accessing the Grindr website, there is an autoplay video of six men in underwear, with a clear imprint of their private areas, caressing each other in a sexual manner. One of the men is holding a laptop which opens up to the Grindr website, showing several user profiles.").

The true crux of all of Defendants arguments is that they are immune from liability because § 230 provides them a shield since Plaintiff's allegations are focused on content and seek to treat the Defendants as publishers of content. This argument simply ignores the plain text of Plaintiff's Second Amended Complaint ("SAC"), and misapplies the CDA analysis. Specifically, Defendants ignore the allegations that Grindr "has ample knowledge from third party sources that its sex platform is used by children who are sexually assaulted by its users" and despite this knowledge, Grindr "fails to warn underage users and their parents that its sex platform is frequently used by pedophiles and other sexual predators to sexually abuse minor children," and that Grindr "failed to act in good faith when opting to maintain their weak age verification system misrepresenting [minors access to the] platform." *See* SAC, p. 5, n. 19-20.

In support of their argument, Defendants' attempt to insert its version of the terms and conditions is inappropriate and would have required the lower court to

apply the motion for summary judgment standard, and thus, should not be considered by this Court.[2] *Day v. Taylor*, 400 F.3d 1272, 1274 (11th Cir. 2005).

What sets this case apart and makes it notably distinct from prior instances where the courts invoke § 230 immunity, is that Grindr is a sex-based platform and Defendants possess knowledge of the danger of sexual abuse posed to minors who easily access their website, a detail Defendants persistently downplay while likening this case to distinguishable precedent related to social media or advertising websites. *Doe v. MySpace Inc.*, 528 F.3d 413, 415 (5th Cir. 2008); *Doe II v. MySpace, Inc.*, 175 Cal.App.4th 561, 573, 96 Cal. Rptr. 3d 148 (Ct. App. 2009) (holding that § 230 bars tort claims based on a duty to restrict access to minors' MySpace profiles); *Doe v. Snap, Inc.*, 2023 U.S. App. LEXIS 16095, *1 (5th Cir. 2023).

The Court in Omegle recognized the difference and adequately considered this fact in its CDA analysis.

---

[2] Defendants acknowledge in its brief that they are quoting a different version of Grindr's Terms and Conditions, other than what has been alleged in the SAC, and thus, the Terms and Conditions quoted in Defendants' opposition cannot be considered by this Court. *See* Appellee's Br. p. 6, n. 2; *Koves v. City of Orlando*, 319 Fed. Appx. 783, 783 (11th Cir. 2009) (holding that "[a]n appellate court cannot review evidence not considered by the district court."); *see also Day v. Taylor*, 400 F.3d 1272, 1274 (11th Cir. 2005) (holding that "[a] court may consider a document attached to a Fed. R. Civ. P. 12(b)(6) motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.")

3

Unlike Reddit's website, Plaintiff has alleged that Omegle's primary use is for online sexual content. Indeed, the products are highly dissimilar. Reddit is used to create groups and threads, while Omegle pairs users one-on-one. Omegle sets up video calls with other users, rather than the asynchronous communication possible via messaging on Reddit. These two differences between the products create a massive gap in their use by predators.

*A.M. v. Omegle.com LLC*, 2023 U.S. Dist. LEXIS 17581 (D. Or. 2022). Like the Court stated in *Roommates*, the outlined "distinction is consistent with the intent of Congress to preserve the free-flowing nature of Internet speech and commerce […]" *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008). There could be certain cases against Grindr where immunity may apply. This is not one of those cases. This is a fact specific inquiry, and blanket immunity should not be applied. Because of the facts alleged, the court should not apply immunity in this case. It would only serve to define a sex-based platform's duty upon having actual or constructive knowledge of the dangers its platform poses to minors.

Courts should be reluctant to extend Section 230 immunity to platforms like Grindr, that knowingly facilitate and enable harm to minors, as protecting minors from exploitation and harm is a significant public policy concern and the primary purpose for Section 230's enactment. *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (citing 141 Cong. Rec. S1953 (daily ed. Feb. 1, 1995) (statement of Sen. Exon) (stating that the primary purpose of the CDA "was to protect children from sexually explicit internet content."); *see also Omegle.com LLC*, 2023 U.S. Dist.

LEXIS 17581. The CDA was not enacted to protect internet service providers that knowingly design products that harm children. Grindr's platform actively facilitates interactions that result in harm to minors; its design makes it easy for minors to access the platform and interact with adults. Further, Grindr's actions, or lack thereof, demonstrate negligence or recklessness in protecting minors from harm, which includes ignoring reports of minors using the platform and failing to implement adequate safety measures. There could be certain cases against Grindr where immunity Section 230 may have applied. This case is not analogous to those instances since Plaintiff's claims are not seeking redress or removal of content and are in no way treating Grindr as the publisher or speaker of content. CDA language does not preclude claims that rest on defective products, and the courts have not interpreted the CDA to have such an effect. Thus, CDA does not immunize Defendants.

This case's distinguishing and important facts are also central to the analysis under the negligence and intentional infliction of emotional distress claims and whether the First Amendment bars Doe's claims, as expounded below.

# **ARGUMENT**

## I.    SECTION 230 IMMUNITY CANNOT ATTACH BECAUSE ALL OF THE ELEMENTS REQUIRED TO TRIGGER IMMUNITY ARE NOT SATISFIED.

### a.    *Plaintiff's Claims Do Not Treat Grindr as a Publisher or Speaker.*

At its core, § 230 "bars lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions -- such as deciding whether to publish, withdraw, postpone or alter content." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 401 (6th Cir. 2014).  Plaintiff's claims do not treat Defendants as a publisher of content. Thus, what must be analyzed under the CDA is whether the "*duty* that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *Force v. Facebook, Inc.*, 934 F.3d 53, 57 (2d Cir. 2019) (emphasis added). "The court must look to what the duty at issue actually requires." *Doe v. Grindr Inc.*, 2023 U.S. Dist. LEXIS 230505, *7, __ F. Supp. 3d __.

Defendants acknowledge that for CDA immunity to apply, Plaintiff must be seeking redress for a breach of duty involving an editorial function.  Although publishing content is a "but-for cause" of just about everything that an ICS does, that does not mean that all claims, seek to hold ICS responsible in its capacity as a

publisher or speaker. *A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814, 818 (D. Or. 2022); *see also*, *Lemmon v. Snap, Inc*., 995 F.3d 1085, 1090 (9th Cir. 2021).

Despite this understanding, Defendants misrepresent the nature of the alleged breaches of duties in the SAC. First, Defendants rely on *Herrick v. Grindr LLC*, where the plaintiff sought redress for Grindr's alleged failure rooted in "screening and remov[ing] unverified posts." *See* Appellees' Br. p. 15; *Herrick v. Grindr LLC*, 765 Fed. Appx. 586, 590 (2d Cir. 2019). Next, Defendants conflate and attempt to recast the SAC's allegations based on the harm alleged, not the duty owed which is the proper inquiry. Defendants rely on *Doe v. Grindr*, which is inconsistent with precedent, and the ongoing development and judicial interpretation of the CDA. *Doe v. Grindr Inc.*, 2023 U.S. Dist. LEXIS 230505, *9-10, __ F. Supp. 3d__. Like the lower Court's ruling, *Doe v. Grindr* deviates from precedent stating, that the second element of the CDA hinges on "duty." On the one hand, the Court asserts "the court must look to what the duty at issue actually requires." *Doe v. Grindr Inc.*, 2023 U.S. Dist. LEXIS 230505, *7, __ F. Supp. 3d __. On the other hand, during its inquiry the Court shifts its focus and states that, "the *harm* animating Doe's claims is directly related to the geolocation and content provided by users, which facilitates the match, direct messages, in-person meetings, and ultimately here, Doe's assaults," when dismissing the plaintiff's claims. The Court's decision is ambivalent, as it clearly

presents contradictions since duty does not equate to harm.[3] If the Court in *Doe v. Grindr* would have applied the correct standard, it most certainly would not have reached the same conclusion. Here too, the trial court utilized the wrong analysis.

Defendants mistakenly rely on *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015). In *Saponaro*, the court dismissed the case finding Section 230 immunity applied because plaintiff sought to "hold Defendant responsible for failing to monitor its website" based on the complaint's repeated "[characterizations of] Defendant's wrongdoing as 'failing to properly supervise its site.'" *Id.* The SAC contains no allegations concerning the duty of Grindr to monitor its site. "The duty underlying a negligent design claim differs markedly from the duties of publishers as defined in the Communications Decency Act." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1090 (9th Cir. Ct. 2021).

In fact, the SAC alleges Defendants breached their duties in connecting adults and minors on a site that connects people for sex and failed to warn of the danger of its own product for minor use, and failed to implement a reasonable age verification system. This is a theory that has been held to not trigger § 230 immunity. Indeed, in

---

[3] Duty is "a legal obligation that is owed or due to another and that needs to be satisfied, that which one is bound to and for which somebody else has a corresponding right." BLACK'S LAW DICTIONARY (11th ed. 2019). Harm is defined as "injury, loss, damage, material or tangible detriment." BLACK'S LAW DICTIONARY (11th ed. 2019). The terms are not interchangeable and have distinct impacts on the CDA analysis.

*A.M. v. Omegle*, plaintiff alleged a product defect, and the Court found that "Omegle could have satisfied its alleged obligation to Plaintiff by designing its product differently." *Omegle.com, LLC*, 614 F. Supp. 3d 814, 819. There, like here, plaintiff alleged that Omegle paired adult with children, and Omegle could have designed the product so that it did not match minors and adults. The Court, when considering the individual facts of the case, correctly held that the duty alleged did not require "Omegle [to] review, edit, or withdraw any third-party content to meet this obligation." *Id*. This case is no different.

The SAC does not allege Grindr had a duty to review, edit or withdraw third party content. Like *Omegle*, Defendants knew that minors accessed Grindr and were sexually abused and trafficked and could have designed its product to prevent minors from accessing the platform. The SAC alleged Grindr had a duty to implement a reasonable age verification feature and warn of the dangers of sexual abuse to minors who access the website, ***none of which pertain Pritt's post themselves***. Any other interpretation of these facts would require that the Court deviate from the motion to dismiss standard, requiring the Court to "accept the facts as true and construes all favorable inferences in the light most favorable to the plaintiff." *Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002).

Relying on *In re Facebook, Inc.* Defendants try to recast the allegations of the SAC. There, the plaintiffs alleged Facebook failed to "implement any safeguards to

9

prevent adults from contacting minors," "report suspicious messages," "warn of the dangers posed by sex traffickers," or "identify sex traffickers on its Platforms." *See* Appellees' Br. p. 16; *In re Facebook, Inc.*, 625 S.W.3d 80, 93 (Tex. 2021). But, the SAC in no way alleges that the "safeguards to prevent adults from contacting minors" require extensive monitoring of third-party content. Instead, Plaintiff alleged that Grindr should only be accessible to consenting adults since it is a website for sex,[4] and Grindr can simply and easily implement a reasonable age verification feature. Unlike Facebook, MySpace, and other websites offered to minors, which would have required monitoring of content of children and adults alike, Grindr can accomplish meeting its duties from the outset ***without*** monitoring third party content. Grindr is gate keeper that knows the danger its website poses to minors, and thus, Defendants can implement a more reasonable age verification process and provide a warning of known dangers without Grindr having to exercise publishing duties.

Defendants argue that it "would be inconsistent with [S]ection 230(c)(1) […] to require an interactive computer service provider to warn its users about the threat of a known sexual predator." *See* Appellees' Br. p. 20. Defendants further argue their lack of knowledge concerning Pritt's misconduct requires a finding that is inconsistent with the law. However, Defendants' argument, rested in their lack of

---

[4] Defendant does not contend that "no persons under the age of eighteen (18) years […] may […] use Grindr services." *See* Appellees' Br. p. 6.

notice of Pritt's specific propensities, is irrelevant to the analysis. Indeed, in *Doe v. Internet Brands*, the Court reasoned, "the tort duty asserted … does not arise from an alleged failure to adequately regulate access to user content or to monitor internal communications that might send up red flags about sexual predators" but rather in Internet Brands' failure to warn. *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016). Here, the SAC alleges this exact breach of duty:

> GRINDR has ample knowledge from third party sources that its sex platform is used by children who are sexually assaulted by its users. Nevertheless, GRINDR fails to warn underage users and their parents that its sex platform is frequently used by pedophiles and other sexual predators to sexually abuse minor children, whereby, condoning said criminal conduct.

*See* SAC, p. 5, at ¶19.

Simply, Doe's claims of negligence due to failure to warn and failure to implement a reasonable age verification process, do not require Grindr to "exclude material that third parties seek to post online." *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022) (citing *Whitney Info. Network, Inc. v. Verio, Inc.*, 2006 U.S. Dist. LEXIS 1424 (M.D. Fla. Jan. 11, 2006). Doe's claims do not require Grindr to take any action with respect to third party posts. Yet, Defendants argue that posting a warning is a form of editing that implicates Section 230's protections. Defendants rely on *Herrick v. Grindr*, and argue that posting a warning about impersonating profiles "depends on Grindr's decision to publish the impersonating profiles without reviewing them first." 306 F. Supp. 3d 579, 591

(N.Y.S.D. 2018); *see also* Appellees' Br. p. 18. Unlike *Herrick*, here, Plaintiff does not allege that a profile specific warning needed to be attached to Pritt's profile or content. In fact, Plaintiff does not allege Grindr breached a duty in allowing access to Pritt's content without warning, but rather Grindr breached its duty in allowing Doe – a minor – to access Grindr without a warning about the inherent dangers of Grindr.

Further, warning minors who access Grindr of potential sexual abuse or sex trafficking is not warning "about the potential misuse of content posted to its site," as stated by Defendants. *See* Appellees' Br. p. 19. Instead, it is a warning that apprises minors who access the website of sexual abuse or sex trafficking, not of third-party content itself.[5] *See e.g., In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, 2023 U.S. Dist. LEXIS 203926, *45-46 (N.D. Ca 2023) (holding that because defendants could use age-verification information to take steps that would not impact their publication of third-party content a plausible theory under which failure to validly verify user age harms users is distinct from harm caused by consumption of third-party content). Therefore, because Plaintiff's allegations do not rest in a breach of an editorial duty and do not rest upon the content, but rather Defendants' breach of failing to ensure safe use of Grindr, the

---

[5] A perfect example is this case. Here, Pritt located Doe via Grindr's geolocation features, which did not involve third-party posts. *See* SAC p. 6, n. 29.

12

second element required to trigger Section 230 immunity is not met. Because all the elements necessary to trigger immunity are required, immunity does not attach in the instant matter and the trial court's decision should be reversed.

### b.   *Doe's Claims do not Fault Grindr for Pritt's Content*

Section 230 "cuts off liability only when a plaintiff's claims fault the defendant for information provided by third parties." *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1318 (M.D. Fla. 2015); *Control Grp. Media Co., LLC*, 2022 U.S. Dist. LEXIS 140211, *41 (S.D. Cal. 2022). Defendants fail to analyze this third element and incorrectly conflate this final element with the material contribution exception to the CDA, discussed in depth below. *See* Appellees' Br. p. 23.

The SAC alleges Grindr has liability due to its unreasonable age verification process and failure to warn. Doe's injury, however, resulted from Pritt's sexual abuse. Doe does not fault Defendants for Pritt's content. The SAC specifically alleges, "Pritt drove to John Doe's neighborhood using Grindr's geolocation features and instructed him to get into his car, where he sexually abused John Doe." *See* SAC p. 6, n. 29. Pritt located Doe, a minor who should have never had access to Grindr to begin with, through the geolocation features, drove to his location and proceeded to sexually abuse Doe in his car, none of which includes content created by Pritt.

In other words, Grindr is not responsible for Pritt's content, but instead for Doe's access to Grindr exposing him to sexual abuse by Pritt. When taking a close look at the facts alleged, the third element is not met, and thus, the CDA does not shield Defendants for their own misconduct.

## II. SECTION 230 DOES NOT PROVIDE DEFENDANTS IMMUNITY PURSUANT TO THE MATERIAL CONTRIBUTION EXCEPTION

An Eleventh Circuit Court found that "[d]efendants are not subject to Section 230 immunity [when] Defendants materially contribute to the creation of illegal content on their platforms." *Doe v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136, 1159 (N.D. Ala. 2022) (denying the motion to dismiss because the plaintiff plausibly alleged that the defendant "materially contributed the content's illegality and thus be liable as a developer"). Defendants argue that Doe has not "plead facts to show" Defendants "create[d]" or "developed" the harmful content. Doe has.

Those who use the internet thus continue to face the prospect of liability, even for their 'neutral tools,' so long as plaintiff's claims do not blame them for the content that third parties generate with those tools." *Lemmon*, 995 F.3d at 1087. The facts of this case are unlike those cases in which neutral search tools or algorithms were misused by bad actors. *MG Freesites, Ltd.*, 676 F. Supp. 3d at 1162.

Summarily, the SAC alleges the following: (1) Grindr had notice of minors easily accessing their app/website; (2) armed with this knowledge, Grindr should have implemented a more reasonable age verification process and warned minors of

the dangers of using Grindr; (3) a proper age verification system and warning would have either prevented or deterred Doe from accessing and using Grindr; and (4) without access and use of Grindr, Doe would not have met and been sexually assaulted by Pritt. Even if the analysis were limited to Pritt's content (his posts, communications, and geolocation information), Defendants' argument clearly fails. Grindr, having superior knowledge that minors were easily accessing the app and engaging in illicit conversations with adult users, contributed to Pritt's illegal content due to the very nature that Doe was a minor when Pritt solicited sex from Doe, engaged in illicit conversations, and, ultimately, sexual abuse.

It is undisputed that Defendants exert complete control over the development of their app/website. The geolocation feature on Grindr, a sex app/website, which knowingly permits easy access to minors and fails to adequately warn minors of the known risks of abuse, cannot be considered a content-neutral tool. Instead, it operates more like a target, facilitating sexual abuse by connecting users, including minors, to each other. Grindr's decision to continue to allow minors easy access to its sex-based app, created the harm by exposing Doe to sexual abuse. For the sake of argument, Pritt may have been unaware that Doe was a minor, but that is of no consequence. Defendants' conscious decision not to employ a reasonable age verification system and warn of dangers to minors, allowed minors access and use of a dangerous website *for them*. Consequently, Defendants are "responsible in part,

for the creation or development of the offending content" by Pritt. *Lemmon*, 995 F.3d at 1093. Had Grindr implemented a reasonable age verification process, preventing Doe access to Grindr, Pritt would not have communicated or met with Doe, a minor, and sexually abused him.  As such, the trial court's decision should be reversed.

## III.  ALLOWING DOE'S SUIT TO PROCEED DOES NOT DAMPEN THE PURPOSE § 230

Defendants argue that § 230's purpose is "[t]o preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer service providers […]" Defendants cannot and do not argue that in applying § 230 immunity, courts have emphasized or expanded plaintiff's legal recourse against third-party content creators. *See e.g.*, *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2015) (holding that the original culpable party does not escape liability under § 230). Thus, allowing Doe's product liability claims against Grindr does not create any new liability for users.

In practice, Grindr's erroneous position is poised to have a reverse impact on the internet and similar interactive computer service providers. Adults who have sex with minors – even when those minors believe they can legally consent – can face criminal liability.[6] Ultimately, Grindr users will likely be deterred from using

---

[6] Statutory rape is generally considered to be a strict liability crime: the perpetrator's knowledge or belief about the victim's age is irrelevant.

websites/apps like Grindr upon realizing their exposure to criminal and civil liabilities on the platform due to possible sexual interactions with minors, thus impacting the "vibrant and competitive free market that presently exists." Indeed, Grindr, with its sole control of its website/app, and superior knowledge of minor access can protect minors and its adult users by making modifications to its age verification system and warnings. Yet, Grindr continuously fails to do so. Defendants' decision to unreasonably maintain the status quo contributes more to eroding the confidence society has in the internet, resulting in decreased trust and increased skepticism among users, than does allowing a lawsuit to proceed to discovery instead of precluding liability at a pleading stage.

## IV. DEFENDANTS' CONDUCT IS NOT PROTECTED BY THE FIRST AMENDMENT

"The First Amendment protects 'only conduct that is inherently expressive,'" *Allied Veterans of the World, Inc. v. Seminole County*, 2011 U.S. Dist. LEXIS 101003, *8 (M.D. Fla. 2011) (holding that the mere payment of money does not amount to such inherently expressive conduct and does not warrant First Amendment protection) (internal citation omitted).

The SAC's allegations for misrepresentation, failure to warn and failure to implement a reasonable age verification system, do not amount to such "inherently expressive conduct," and therefore, do not warrant First Amendment protection. *Id*. At best, Doe's claims would have an "incidental" effect on speech. *Homeaway.com,*

17

*Inc. v. City of Santa Monica*, 2018 U.S. Dist. LEXIS 40198, *17 (C.D. Cal. 2018).

"[T]he First Amendment does not prevent restrictions directed at […] conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2001).

Defendants argue that imposing age verification violates the First Amendment and will have a chilling effect on communication. Defendants' argument is hollow. Contrary to Defendants' misrepresentation, Doe is not seeking to hold Grindr liable for Pritt's communications via the platform and thus, this matter is entirely distinguishable from Defendants' cited cases. *See* Appellees' Br. p. 29.[7]

Defendants argue that Grindr serves the LGBTQ community who "without the assurance of anonymity," may face a "stigma" for using its product. *See* Appellees' Br. p. 32.[8] However, mandating a more robust age verification process does not equate to forfeiting anonymity to the public, nor does it require defendants to change when and how much they publish speech. *See e.g., In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, No. 4:22-MD-03047-YGR, 2023

---

[7] Defendant cites to *United States v. Xcitement Video, Inc*., 513 U.S. 64, 73-74, 78 (U.S.) where the Court required construing statute to punish only known distribution of child sexual abuse material. If the Court determines that Defendants' conduct is inherently expressive, the First Amendment does not shield them from liability for knowingly exposing children to sexual abuse.

[8] Grindr allows locating users via its geolocation app, and collects payment from users for Grindr unlimited, which requires users' entering identification and financial information, also defeating full anonymity Defendants claim to uphold.

WL 7524912, at *18 (N.D. Cal. Nov. 14, 2023), motion to certify appeal denied, No. 4:22-MD-03047-YGR, 2024 WL 1205486 (N.D. Cal. Feb. 2, 2024) (holding design defect product liability claims against operators of social media platforms including lack of a reasonable age verification system were not barred by First Amendment because alleged defects would not require operators to change how or what speech they disseminated).

Finally, there are "types of speech [that are] so utterly lacking in social value that they [fall] outside the protections of the First Amendment altogether." *State v. Higginbotham*, 2024 N.J. LEXIS 378, *19 (2024) (citing *State v. Hill*, 256 N.J. 266, 281 (2024)). "Narrow categories of speech that are historically unprotected by the First Amendment include obscenity and child pornography. *Id*. A sexual predator's communications with a minor, is not protected speech.

## V. DEFENDANTS OWED JOHN DOE A DUTY AFTER CREATING A FORESEEABLE ZONE OF RISK

Longstanding and binding case law "recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." *Borrack v. Reed*, 53 So. 3d 1253, 1253 (Fla. 4th DCA 2011). Defendants who create "a risk [are] required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element." *Id*. One who creates or controls a risk may have a duty in

negligence. *Demelus v. King Motor Co. of Ft. Lauderdale*, 24 So. 3d 759, 761 (Fla. 4th DCA 2009).

"A legal duty does not exist merely because the harm in question was foreseeable—instead, the defendant's conduct must create the risk. In other words, a duty requires one to be in a position to control the risk." *Saunders v. Baseball Factory*, 2023 Fla. App. LEXIS 3281, *1 (Fla. 4th DCA 2023). In *Saunders*, the Court dismissed the complaint, finding that "absent notice of a player's propensity for violence or of some additional risk factor that would give the operator an objectively reasonable basis for having measures in place in anticipation of possible violence at the game." *Id*. Unlike in *Saunders*, where there were no facts to support that the defendant could have possibly anticipated a third party's criminal act, Grindr had actual notice that minors who had the ability to access its platform due to its weak verification system, were being targeted by sexual predators and sexually abused or trafficked. *Id*. Nonetheless, Grindr failed to warn and implement a reasonable age verification system. Construing the SAC in the light most favorable to Plaintiff, Grindr's conduct created the risk of sexual abuse of minors on its platform, and therefore, Grindr owed John Doe a duty to lessen the risk of sexual abuse by its users.

"The inquiry then turns to whether the duty of care created by this conduct extends to the misconduct of [Pritt], a third party." *Dorsey v. Reider*, 139 So. 3d 860,

864 (Fla. 2014). "[A] duty to protect strangers against the tortious conduct of another can arise if, at the time of the injury, the defendant is in actual or constructive control of the instrumentality [..]" *Stephens v. Availity*, 2019 U.S. Dist. LEXIS 239572, *11 (M.D. Fla. 2019); *Reider*, 139 So. 3d 860, 864; *T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 503 (4th DCA 2005) (citing *Daly v. Denny's, Inc.*, 694 So. 2d 775, 777 (Fla. 4th DCA 1997). Florida has held for almost fifty years, "[d]uty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection [or not]." *Gracey v. Eaker*, 837 So. 2d 348, 354-55 (Fla. 2002) (internal citation omitted). Doe is "entitled to protection." *Id*. The SAC alleges that Defendants were in actual or constructive control of the Grindr application facilitating sex amongst its users, and the geolocation features used by Pritt to locate Doe. Defendants' failure to warn and implement reasonable age verification measures, placed Doe (a minor) in a foreseeable zone of risk of sexual abuse by adult Grindr users. Further, Defendants had actual and constructive control of Grindr, the instrumentality catalyzing, and facilitating the sexual abuse prior to and at the time of the injury, justifying the imposition of a duty pursuant to Florida law.

"Defendants' affirmative conduct created a foreseeable zone of risk." *Vining v. Avis Rent-A-Car Systems, Inc.*, 354 So. 2d 54 (Fla. 1977). Here, Defendants did not just create an app as they argue. Defendants created an avenue by which

predators and traffickers have access to unsuspecting, vulnerable minors. The SAC alleges actual or constructive notice of minors being sexually abused by Grindr users after easily bypassing the age verification check box. Coupled with the fact that Grindr a sex-based platform differentiates the instant case from Defendants' cited cases, justifying the imposition of a duty owed to Doe.

Tellingly, in arguing its erroneous position, Defendants failed to cite to binding and applicable caselaw, and instead, cite to cases outside of this jurisdiction. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that when a federal court considers a case that arises under diversity jurisdiction, it is well established that the court should apply state substantive law and federal procedural law).

The SAC alleges that Grindr failed to exercise reasonable care to eliminate the danger of the known dangerous condition of children accessing its app/website and being sexually abused or trafficked involving an unreasonable risk of death or harm, and that children were likely to continue to access Grindr because of their youth and the inability to realize the risk involved. *Martinello v. B & P United States*, 566 So. 2d 761, 763 (1990). Thus, Grindr owes its users a duty to warn and protect of known dangers, thus, equally owing Doe a duty to warn and protect.

Contrary to Defendants' argument, ample precedent supports that Plaintiff has indeed plead sufficient plausible facts demonstrating that Defendants owed Doe a duty of care. Defendants are unable to show that Doe cannot, "beyond doubt," prove

no set of facts in support of his claim which would entitle him to relief, warranting a reversal of the trial court's decision. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## VI. KNOWINGLY EXPOSING CHILDREN TO SEXUAL ABUSE OR TRAFFICKING IS ODIOUS AND UTTERLY INTOLERABLE IN A CIVILIZED COMMUNITY

Viewing the SAC in the light most favorable to Plaintiff, the elements of IIED were sufficiently plead. *Smith v. Volusia County*, 2011 U.S. Dist. LEXIS 46479, *16-17 (M.D. Fla. 2011).

"[A] jury could reasonably conclude that [Defendant's] actions against [Plaintiff] were 'odious and utterly intolerable in a civilized community.'" *Seminole County Sch. Bd.*, 636 F. Supp. 2d 1317, 1326 (M.D. Fla. 2009) (internal citations omitted) (denying summary judgment when there was "evidence that M.S. was physically abused on multiple occasions for behavior as uncontrollable as wetting his pants, including on one occasion hitting M.S. with sufficient force to cause his chin to hit his knee and on another occasion spanking him hard enough to leave fingerprint marks"); *see also*, *Smith v. Volusia County*, 2011 U.S. Dist. LEXIS 46479, *16-17 (M.D. Fla. 2011) (finding that this element was satisfied upon alleging that with the purpose of embarrassing the plaintiff, the defendant disclosed to the plaintiff's employer that the plaintiff had engaged in sexual activity, and as result, she was no longer employed). Summarily, the SAC alleges that Defendants, knowing of minors easily accessing their platform and falling prey to sexual abuse

and sex trafficking by its adult users, maintained a perfunctory age verification system and failed to warn of the known dangers, knowingly exposing minors everywhere to sexual abuse and trafficking, for financial benefit. Indubitably, satisfying the requisite element of IIED; especially where sex trafficking and sexual abuse of children is an epidemic. Furthermore, children are one of our most vulnerable populations and failing to implement reasonable measures that can prevent a complete derailment of their lives is "outrageous." *Seminole County Sch. Bd.*, 636 F. Supp. 2d at 1326.

Defendants' argument takes the SAC's allegations and twists them to blame a minor victim, arguing that the minor bypassed the age verification system which is irrelevant to the IIED analysis. *See* Appellees' Br. p. 37. In the cases cited, Defendants have compared Doe with belligerent and uncooperating adults, who as a result, were arrested or detained, and a case where a landlord failed to have alternative housing for its tenant. *See* Appellees' Br. p. 37. Grindr's argument is nonsensical and blatantly ignores the SAC's allegations: it is Grindr's duty to have a safe product for users and allowing minors on a product which pairs them with adults for sex, without age verifications and without a warning is outrageous.

Confusingly, Defendants argue that their conduct amounts to nonfeasance, and thus, does not satisfy the outrageousness requirement of IIED. *See* Appellees' Br. p. 36. Defendants misinterpret the elements of IIED, claiming that Doe failed to

allege malice or criminal conduct. *Id*. *Martin v. Baer*, 928 F.2d 1067, 1073 (11th Cir. 1991). However, this is not the law. Indeed, "what must be considered is whether "the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id*. Thus, Doe's allegations that Grindr failed to warn and implement a reasonable age verification feature upon knowing minors were easily bypassing the current verification feature and being sexually abused and trafficked by users are enough to satisfy the elements of IIED because it would cause a reasonable person to experience "resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id*. at 1073.

## **CONCLUSION**

Based on the foregoing reasons, the Court should vacate the District Court's order dismissing this case and remand this matter for a determination on the merits.

Dated:     May 28, 2024
           Boca Raton, FL

                          Respectfully submitted,


                          /s/ Krisel McSweeney
                          Krisel McSweeney
                          Florida Bar No.: 112637
                          MCSWEENEY LAW FIRM
                          5550 Glades Road, Suite 500
                          Boca Raton, Florida  33431
                          (800) 540-0668 – Telephone
                          (561) 961-5191 – Facsimile
                          Kmcsweeney@mcsweeneylawfirm.com

                          *Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

        this brief contains <u>6,116</u> words, excluding those parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Office Word</u> in <u>Times New Roman</u>, <u>14-point</u>.

Dated:     May 28, 2024
            Boca Raton, FL

                        Respectfully submitted,


                        <u>/s/ Krisel McSweeney</u>
                        Krisel McSweeney
                        Florida Bar No.: 112637
                        MᴄSᴡᴇᴇɴᴇʏ Lᴀᴡ Fɪʀᴍ
                        5550 Glades Road, Suite 500
                        Boca Raton, Florida  33431
                        (800) 540-0668 – Telephone
                        (561) 961-5191 – Facsimile
                        Kmcsweeney@mcsweeneylawfirm.com

                        *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 28, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

Dated:      May 28, 2024
              Boca Raton, FL

Respectfully submitted,

/s/ Krisel McSweeney
Krisel McSweeney
Florida Bar No.: 112637
MCSWEENEY LAW FIRM
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(800) 540-0668 – Telephone
(561) 961-5191 – Facsimile
Kmcsweeney@mcsweeneylawfirm.com

*Counsel for Appellant*